KENTUCKY BROADCASTING CORPORA-
TION, Inc. v. FEDERAL COMMUNI-
CATIONS COMMISSION. (Mid-America
Broadcasting Corp., Intervenor).

No. 9856.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 13, 1949.

Decided April 6, 1949.

Mr. Joseph F. Zias, of Washington, D. C., with whom Messrs. Philip G. Loucks, Verne R. Young and Maurice M. Jansky, all of Washington, D. C., were on the brief, for appellant.

Mr. Max Goldman, Asst. Gen. Counsel, Federal Communications Commission, of Washington, D. C., with whom Messrs. Benedict P. Cottone, Gen. Counsel, Federal Communications Commission, Richard A. Solomon, Atty., Federal Communications Commission, and Miss Mary Jane Morris, Atty., Federal Communications Commission, all of Washington, D. C., were on the brief, for appellee.

Mr. Andrew G. Haley, of Washington, D. C., with whom Mr. James A. McKenna, Jr., of Washington, D. C., was on the brief, for intervenor, Mid-America Broadcasting Corporation, urging affirmance.

Before CLARK, PRETTYMAN and PROCTOR, Circuit Judges.

CLARK, Circuit Judge.

By this appeal we are asked to review a final decision of appellee, Federal Communications Commission, released on October 24, 1947, which granted the application of intervenor, Mid-America Broadcasting Corporation, for authorization to construct and operate a new standard broadcast station, and which denied the application of appellant, Kentucky Broad-

casting Corporation, Inc., for the same facilities.

On November 16, 1944, Mid-America filed with the Commission its application for authorization to construct and operate a new standard broadcast station at Louisville, Kentucky, on the frequency of 1080 kc with one kilowatt power night and five kilowatts power day.[1] This application by Mid-America was held in *status quo* until the lifting of the Commission's "wartime freeze policy" on October 7, 1945.

On September 24, 1945, appellant (Kentucky), then and now licensee of Station WINN at Louisville, operating on 1240 kc, with 250 watts power, unlimited time, filed its application for a change in frequency from 1240 kc to 1080 kc and for an increase in power from 250 watts to one kilowatt night and five kilowatts day (the identical facilities sought by Mid-America).

There was also on file with the Commission an application by the Indiana Broadcasting Corporation, Inc., licensee of Station WIBC, Indianapolis, Indiana, operating on the adjacent frequency of 1070 kc, for an increase in power from 5 to 50 kilowatts.

These three applications (two of which were mutually exclusive) were consolidated for hearing before a presiding officer. This hearing took place on April 22 through 25, 1946. On January 15, 1947, the Commission adopted a proposed decision looking to a grant of Mid-America's application and a denial of that of Kentucky. By order of April 4, 1947, the Commission severed and granted the application of Indiana, thus leaving for comparative consideration the mutually exclusive applications of Kentucky and Mid-America. The validity of this severance order is not challenged by any party to this appeal and is not in issue in the case.[2]

Exceptions and requests for oral argument on the proposed decision having been

---

[1] The record shows that Mid-America had applied for these same facilities as early as February, 1940, and that such application had been granted and a construction permit issued by the Commission. However, due to the Commission's dismissal *without prejudice* of application

tions for modification of the construction permit, an action requested by Mid-America, the permit expired in 1942.

[2] *Cf.* Mansfield Journal Company v. Federal Communications Commission, 173 F.2d 646.

filed, oral argument was held before the Commission *en banc* on April 24, 1947. Briefs were thereafter filed with the Commission by Kentucky and by Mid-America. On October 24, 1947, the Commission released its final decision granting the application of Mid-America and denying that of Kentucky. Following that final decision, Kentucky filed with the Commission (1) a petition for rehearing based on alleged newly discovered evidence, (2) a request for oral argument before the Commission *en banc,* and (3) a supplemental request for oral argument. By memorandum opinion and order released April 12, 1948, the Commission denied these three requests and Kentucky promptly appealed to this court. Intervenor, Mid-America, is currently operating Station WKLO at Louisville as the result of the grant appealed from herein.

We have examined the comparatively small record before us in this case and see no ground for disturbing the decision of appellee Commission. We shall consider briefly below a few of the many assignments of error raised by appellant. All other contentions of appellant not specifically mentioned herein are, of course, considered insubstantial.

■ Kentucky complains that it is "manifestly clear" that the Commission in ruling against it "gave consideration and controlling weight to extralegal considerations," namely, that the Commission in its decision attached undue importance to the fact that Mid-America had formerly been granted a permit to construct the facilities it now operates.[3] As a preliminary, we wish to state that the Commission's prior rulings with regard to the same applicant for the same facilities cannot properly be characterized as "extralegal considerations." But, be that as it may, study of the record and of the several opinions of the Commission makes it clear that this factor was definitely not given controlling, or even substantial, weight below, but rather was mentioned in passing by the Commission in support of its comment that Mid-America was not then seeking for the

first time to render broadcast service to the Louisville area. We feel the Commission acted properly in this respect and that Kentucky's contention is not supported by the record. We know of no rule of law which absolutely precludes the Commission from *any* consideration of the priority of applications filed with the Commission so long as that consideration is not the controlling factor in arriving at a final decision as between two mutually exclusive applications. It was not the controlling factor in this case.

■ Appellant calls attention to the Commission's prior decision in In re Valdosta Broadcasting Co. et al.,[4] and complains of the Commission's failure to follow that decision. In the Valdosta case the Commission granted the application of an existing licensee and denied the mutually exclusive application for new service and indicated in its decision that, all other factors being equal, it would prefer an existing licensee to a newcomer. A preliminary answer to Kentucky's claim that the Commission erred in not following its Valdosta decision is the rule of law that the doctrine of *stare decisis* is not generally applicable to the decisions of administrative tribunals.[5] However, even assuming that the Commission is bound by its own prior determinations, the Valdosta case is factually distinguishable from the instant case. In the Valdosta case the Commission's decision makes it clear that there the program proposals of the two competing applicants were equally meritorious. That is not true in the present case, as will be seen below, and accordingly there was no occasion to indulge in the presumed preference of an existing licensee over a newcomer.

■ The Commission expressly found that on the basis of superior local programming the application of Mid-America was to be preferred over that of Kentucky. This finding seems to have been the chief determinative factor in the case, if any one factor can safely be called the deciding one in a case such as this.[6] We find ample and

3 See footnote 1, supra.
4 3 Pike & Fisher R. R. 619 (1946).

5 See State Airlines, Inc., v. Civil Aeronautics Board, 174 F.2d 510.
6 The proposed decision in this case

substantial evidence of record to support the finding that Mid-America's proposed service would better serve the community needs of Louisville and environs than would that of Kentucky. Kentucky is, and was at the time of the proceedings below, a network affiliate. Mid-America proposed, and is now presumably providing, new, local, non-network program service. Mid-America proposed the carrying of musical programs by local organizations such as the Louisville Philharmonic Orchestra and the Louisville Summer Opera. Kentucky's proposals contained no such local musical service. Mid-America planned to broadcast religious programs from local churches. The religious programs carried and proposed by Kentucky were solely network programs. Mid-America proposed various locally-originated programs of cultural, dramatic and forensic nature. There were no comparable proposals by Kentucky. Mid-America's proposed coverage far exceeded that of Kentucky with respect to farm programs of immediate interest to the rural populace in areas immediately surrounding Louisville. As to local news service, Kentucky had no members of its staff assigned to gathering local news and obtained such news only from the Associated Press wire service. On the other hand, Mid-America proposed to establish a staff of three to gather and disseminate local news, this in addition to providing the usual wire service news broadcasts. It is thus apparent that the Commission was completely correct in deciding in favor of Mid-America on the basis of far superior local program proposal.

■ A further factor which the Commission considered and mentioned in its written decisions but which was not given controlling weight was that of local residence of the stockholders and directors of the two competing applicant corporations.[7] In this respect the two applicants hung in equal balance and there is no doubt that

the Commission could have properly found that either or both met the requisite residence requirements. Kentucky allegedly had 70% of its stock owned by "established residents of Louisville," whereas 55.6% of Mid-America's stock was owned by Louisville residents. However, the record shows that the great majority of Mid-America's stockholders and directors are long-time residents of Louisville, several of whom were born and raised in Louisville or nearby in Kentucky. Almost all of Kentucky's stockholders and directors came to reside in Louisville since or during World War II. On this state of the record, we certainly would not be justified in ruling that the Commission arbitrarily or capriciously chose Mid-America over Kentucky on the basis of residence.

■ Appellant also contends that the Commission abused its discretion in denying a rehearing on alleged newly discovered evidence. Appellant argues that intervenor lacked the proper character qualifications of a licensee, that the effect of intervenor's proposed network affiliation on its program proposals should have been considered, and that the effect of the establishment of two new stations in Louisville upon intervenor's ability to render the service it proposed should have been taken into consideration.

As to the evidence concerning character qualifications of intervenor, there was no attempted explanation of why the alleged facts were not discovered prior to the original hearing, no verified statement of facts accompanying the petition, and no proof that the alleged newly discovered evidence would, if true, affect the decision of the Commission. Section 1.893(a) of the Commission's Rules and Regulations provides that: "Where the existence of newly discovered evidence is claimed, the petition must be accompanied by a verified statement of the facts, together with the facts relied on to show that the petitioner, with due diligence, could not have

---

contained the express statement that "several factors motivated the Commission's conclusion that the application of Mid-America Broadcasting Corporation is to be preferred."

[7] It is, of course, generally true that

persons living in a community have a better knowledge of local civic affairs, acquaintance with community activities and understanding of local needs and desires.

known or discovered such facts at the time of the hearing." [8] Almost identical language is contained elsewhere in the Rules and Regulations.[9] Under these circumstances, we do not regard the Commission's action in striking that portion of the petition for rehearing as erroneous.

As to the possibility of intervenor's securing a network affiliation in the future and the effect of that possible future affiliation on intervenor's proposed local program service, that contingency was thoroughly discussed and considered by the Commission prior to its final decision. The testimony of one of Mid-America's directors and stockholders before the presiding officer was to the effect that Mid-America would welcome and accept network affiliation *only* if such an arrangement would not be "at the sacrifice of local programs." There was ample and uncontroverted evidence to support the Commission's finding that Mid-America's proposed local programming would not suffer from a possible future network affiliation.

As to the effect upon Mid-America's operation under its license of the establishment of two new daytime stations in Louisville which will presumably render local non-network service, the record in this proceeding shows nothing as to the effect of these new stations on intervenor's proposed service and the establishment of the two new stations certainly adds nothing to a determination of which of two competing applicants will provide better service. The Commission was correct when it stated: "We do not believe that such factors constitute changed conditions warranting a reopening of the record; nor do we believe that they effect [*sic*] Mid-America's ability to fulfill its overall program proposals.

Further, it is noteworthy that the operation by Mid-America of the facilities which it has been authorized to provide will in no way affect the operation by Kentucky of Station WINN as it is presently licensed to operate that station.

We hold that the Commission in this case accorded the parties hereto a full and fair comparative hearing as required by the opinion of the Supreme Court in Ashbacker Radio Corp. v. Federal Communications Commission,[10] and that appellant's contentions are without legal merit. Accordingly, the decision of the Commission is

Affirmed.

---

[8] 1 Pike & Fischer R .R. 51:415.

[9] Section 1.390(e) provides in part: "Where the petition is based upon a claim of newly discovered evidence, it must be accompanied by a verified statement of the facts relied upon, together with the facts relied on to show that the petitioner, with due diligence, could not have known or discovered such facts at the time of the hearing." 1 Pike & Fischer R. R. 51:235.

[10] 1945, 326 U.S. 327, 66 Sup.Ct. 148, 90 L.Ed. 108.