FRED B. HANDLON, PLAINTIFF-APPELLANT, v. TOWN OF
BELLEVILLE AND LOUIS A. NOLL, DIRECTOR OF THE
DEPARTMENT OF PUBLIC SAFETY OF THE TOWN OF
BELLEVILLE, DEFENDANTS-RESPONDENTS.

Argued January 9, 1950—Decided February 27, 1950.

100

*Mr. Jacob Fox* argued the cause for appellant.

*Mr. G. Dixon Speakman* argued the cause for respondents (*Messrs. Toner, Speakman & Crowley,* attorneys).

The opinion of the court was delivered by

HEHER, J. On April 24, 1947, after a public hearing on notice, the Director of Public Safety of Belleville removed appellant from the "office" of "clerk" of the local Recorder's Court for "neglect of duty, incompetency and inefficiency" in particulars not pertinent to the present inquiry. There was an appeal to the Civil Service Commission; and on July 1st ensuing the action of the local authority was sustained and the appeal dismissed. On the succeeding August 18th, appellant petitioned the Commission for a rehearing of the appeal; and on October 7th following, after hearing, the petition was

denied. Two weeks later, the Commission on its own motion, and without a hearing or notice of hearing, "reconsidered" its prior action, vacated appellant's dismissal from the "position" in question as "too severe," and directed, as a substitute punitive measure deemed "fully adequate and equitable discipline," his suspension "from position and pay, effective April 15, 1947, and continuing to and through October 31, 1947," and thereupon his restoration to the claimed clerkship "regardless of any assignment of the duties theretofore performed by him as clerk" of the court "to any other person under the same name or any other title, as of November 1st, 1947." Meanwhile, the clerk's functions had been transferred to another municipal servant "without added compensation;" and compliance with the modified judgment of the Civil Service Commission was refused on the ground that "there were no duties" for appellant "to perform as an employee of the Town" and "no position existed to which he was legally entitled." Thereupon, on December 22, 1947, an alternative writ of *mandamus* issued; and the cause came on for hearing before the Appellate Division of the new Superior Court. It was there held that the Civil Service Commission's modification of its original judgment was *corem non judice* for failure of notice to the parties in interest and an opportunity to be heard, and also for want of proof of "fraud, newly discovered evidence or inadvertence."

## I.

Citing the power to modify or amend the penalty conferred upon the Civil Service Commission by chapter 76 of the Session Laws of 1938, as amended by chapter 184 of the Session Laws of 1946 (*N. J. S. A.* 11:2A–1), appellant maintains that the Commission's adverse action in this regard is subject to reconsideration without a hearing on notice. The proposition is untenable.

The Civil Service Commission is a governmental administrative agency whose function in the particular circumstances is *quasi*-judicial, for it is of the general nature

of a judicial act or proceeding, and is therefore conditioned in the mode of its exercise by the fundamental requisites of due process of law. Administrative tribunals are designed to provide in certain areas of governmental service the supervision which could not be effectively exercised either directly through self-executing legislation or by the judicial process. *Federal Communications Commission v. Pottsville Broadcasting Co.,* 309 *U. S.* 134, 60 *S. Ct.* 437, 84 *L. Ed.* 656 (1939); *Morgan v. United States,* 304 *U. S.* 1, 58 *S. Ct.* 773, 82 *L. Ed.* 1129 (1937). The specialized service of the administrative tribunal ofttimes partakes of the legislative, executive and judicial powers. *Humphrey v. United States,* 295 *U. S.* 602, 55 *S. Ct.* 869, 79 *L. Ed.* 1611 (1935). The courts themselves provide what are essentially administrative processes. 21 *Am. Bar Asso. J.* 708; 89 *U. of Pa. Law Rev.* 1052. Where the administrative tribunal's function partakes of the judicial, its exercise is styled *"quasi-*judicial;" but it is the exercise of judicial power nonetheless, conditioned upon the observance of the traditional safeguards against arbitrary action—what Chief Justice Hughes has termed "the rudimentary requirements of fair play." *Morgan v. United States, supra.* The prefix *"quasi"* is descriptive of the judicial faculty assigned to administrative agencies and public officers not a part of the judiciary. Whether the proceeding in essence is legislative or judicial is determined by the nature of the final act and the character of the process and operation rather than by the general character of the authority itself. *Morgan v. United States,* 298 *U. S.* 468, 56 *S. Ct.* 906, 80 *L. Ed.* 1288 (1936); *Arizona Grocery Co. v. Atchison, T. & S. F. R. Co.,* 284 *U. S.* 370, 52 *S. Ct.* 183, 76 *L. Ed.* 348 (1932); *Prentis v. Atlantic Coast Line Co.,* 211 *U. S.* 210, 29 *S. Ct.* 67, 53 *L. Ed.* 150 (1908).

The power to hear and determine is not peculiar to the judicial function. The mere exercise of judgment and discretion in the performance of an official act is not necessarily the exertion of what is denominated judicial power. *State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504, 522 (*E. & A.* 1935); *Arizona Grocery Co. v. Atchi-*

son T. & S. F. R. Co., supra; Sunshine Anthracite Coal Co. v. Adkins, 310 U. S. 381, 60 S. Ct. 907, 84 L. Ed. 1263 (1940); Opp Cotton Mills, Inc., v. Administrator of Wage & Hour Division, 312 U. S. 126, 61 S. Ct. 524, 85 L. Ed. 624 (1941). A discretion may be judicial on the one hand, or nonjudicial or legislative or executive on the other. 115 A. L. R. 9. The need of our modern complex society for administrative agencies and tribunals endowed with both legislative and judicial functions has given rise to the new classification of "Administrative Law." Mulhearn v. Federal Shipbuilding Co., 2 N. J. 356 (1949). The grouping of the particular function is determined by its essential quality, considered in relation to the historic guaranties against the use of arbitrary power. The inquiry is whether the proceeding is one of ordinary administration purely executive in character or a legislative proceeding having special attributes under the statute which call for the observance of procedural due process. The requirement of a "hearing" has reference to the tradition of judicial procedings in which evidence is received and weighed by the trier of the facts and the issue determined uninfluenced by extraneous considerations which might not be exceptionable in other fields involving purely executive action. The "hearing" is "the hearing of evidence and argument." Morgan v. United States, 298 U. S. 468, 56 S. Ct. 906, 80 L. Ed. 1288 (1936); Shields v. Utah Idaho Cent. R. Co., 305 U. S. 177, 59 S. Ct. 160, 83 L. Ed. 111 (1938); Pennsylvania R. R. Co. v. New Jersey Aviation Commission 2 N. J. 64 (1949). The quality of the act rather than the character of the agency exercising the authority is determinative of the nature of the power and the need for procedural due process. Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising a discretion or judgment judicial in nature on evidentiary facts, the function is ordinarily quasi-judicial and not ministerial. The classification depends upon the nature of the act and the controls placed upon the exercise of the power in the legislative grant. National Dairy Products Co. v. Milk Control

*Board,* 135 *N. J. L.* 491 (*Sup. Ct.* 1945) ; *McFeely v. Board of Pension Commissioners,* 1 *N. J.* 212 (1948) ; *Sunshine Anthracite Coal Co. v. Adkins, supra; St. Joseph Stock Yards Co. v. United States,* 298 *U. S.* 38, 56 *S. Ct.* 720, 80 *L. Ed.* 1033 (1936).

Here, the power exercised is indubitably judicial in nature. The Legislature has so considered it. The statute protects all officers, clerks or employees in the competitive class of the local civil service against removal or discharge except for cause, determined after a hearing by the appointing authority upon notice; and the Civil Service Commission is invested with the power of review of the action of the local authority, at the instance of the person so removed or discharged, exercisable also after a hearing upon notice in the mode characteristic of judicial proceedings. The parties may be represented by counsel; and the Commission "shall hear witnesses and receive all competent evidence produced and may compel by subpoena the attendance of witnesses and the production of evidence," and "shall determine the case upon the evidence presented." *R. S.* 11:22–38, 11:22–39, 11:22–40.

In analogy to the authority of courts of general jurisdiction at common law, administrative tribunals possess the inherent power of reconsideration of their judicial acts, except as qualified by statute. This function arises by necessary implication to serve the statutory policy. *McFeely v. Board of Pension Commissioners, supra.* In early times the power was exercisable by the common-law courts "at any time while the cause" remained "within the power and under the control of the court, provided the party" had "not slept on his rights, but * * * embraced the first opportunity he had of presenting his case," and the court could "hear the defendant without endangering the rights of the plaintiff as against him." *Kelly v. Bell,* 17 *N. J. L.* 270 (*Sup. Ct.* 1839) ; *Assets Development Co. v. Wall,* 97 *N. J. L.* 468 (*E. & A.* 1922). See, also, *Breen Iron Works v. Richardson,* 115 *N. J. L.* 305 (*Sup. Ct.* 1935). Out of a natural respect for the finality of judgments, the judicial hand was stayed unless the moving party practiced due diligence. Barring statutory regulation,

the power may be .invoked by administrative agencies to serve the ends of essential justice and the policy of the law. But there must be reasonable diligence. The denial to such tribunals of the authority to correct error and injustice and to revise its judgments for good and sufficient cause would run counter to the public interest. The function cannot be denied except by legislative fiat; and there is none such here. The power of correction and revision, the better to serve the statutory policy, is of the very nature of such governmental agencies. It involves the exercise of a sound discretion, controlled by the statutory considerations and the dictates of justice; the action taken must rest on reasonable grounds and be in no sense arbitrary.

But the performance of this function is likewise conditioned by the demands of procedural due process for the protection of private and public interests. There cannot be a substantial change in the rights of the parties without a hearing on notice. *Murphy v. Farr*, 11 *N. J. L.* 186 (*Sup. Ct.* 1829); *Protomastro v. Board of Adjustment of Hoboken*, 3 *N. J.* 494 (1950); *McFeeley v. Board of Pension Commissioners, supra.* Here, so far as the record reveals, there was no consideration of time or circumstance which deprived the Commission of the power to modify the judgment by the substitution of the stated penalty for dismissal, if it deemed that course consonant with justice and the statutory policy, except the failure of notice and an opportunity to be heard on that issue after the denial of the petition for a rehearing. The Commission's jurisdiction had not terminated; but it was exercisable, on its own motion or at the instance of a party, only in the mode ordained by the rule of due process. It does not matter that this is not a controversy between private individuals involving personal or property rights, but rather the right to hold the claimed public office or position; the Legislature has provided for a hearing on notice and a proceeding judicial in nature. The action under review is therefore a nullity and, by the same token, subject to collateral attack. *Maguire v. Van Meter*, 121 *N. J. L.* 150 (*E. & A.* 1938); *Miske v. Habay*, 1 *N. J.* 368 (1949).

## II.

But the proceeding is not maintainable for want of a *res* within the cognizance of the Civil Service Commission.

The claimed office has no existence in the law, for lack of an ordinance creating it. It is settled law that under *R. S.* 40:48–1, a municipal office or position, if not created by statute, can come into being only by ordinance of the local governing body. The sense of the statute is that, because the creation of offices and positions involves an increase of the financial burden of local government, the power is exercisable only by ordinance, a deliberative process requiring notice to the public. *Toomey v. McCaffrey,* 116 *N. J. L.* 364 (*Sup. Ct.* 1936); *Serrilella v. Water Commission of Garfield,* 128 *N. J. L.* 259 (*Sup. Ct.* 1942); *Davaillon v. Elizabeth,* 121 *N. J. L.* 380 (*Sup. Ct.* 1938); *City of Orange v. Goldberg,* 137 *N. J. L.* 73 (*Sup. Ct.* 1948).

The "existence" of the office or position is not "implicit" in *R. S.* 2:225–1, authorizing the local governing body, by resolution, to appoint a recorder for a term of five years, and *R. S.* 2:16–4, providing that no judge "of any court of law shall act as the clerk of the court of which he is the judge," so as to constitute legislative creation. We do not perceive in these provisions a legislative direction for the appointment of a clerk of the local court, even though the post be deemed unnecessary. The need is a matter for the discretion of the local authority. We find in the cited act no suggestion of a legislative determination of the need without regard to local conditions. See *Rule* 8:10–10 of this Court.

But it is urged that appellant was "in the employ" of Belleville when the Civil Service Act was adopted by the municipality, and so within the protection of the civil service tenure extended by *R. S.* 11:21–6 to "all officers, clerks and employees in the employ" of the municipality, except "such as may be appointed between the time of the filing of the petition for the adoption" of the Act "and the holding of

the referendum." It is said that appellant was one of the "employees" of the Town when the Act was accepted and "his duties came 'within the competitive or noncompetitive class of the civil service,'" and so he "became an employee in the classified service when civil service became operative in the town." The fallacy of this reasoning is patent.

It was not designed by the cited provision to bring within the ambit of the statute persons claiming offices or positions which had no legal being, and thus to create offices and positions having no existence before. The act has no such sweep. Its aim was the security of tenure during good behavior for those of the particular class who were lawfully in the employ of the municipality, not those who had usurped authority in places having no legal sanction whatever. Validation was not in legislative contemplation. *De jure* offices and employments alone were in view. This interpretative principle has been consistently applied to this and similar statutes in the cases cited *supra. E. g., Toomey v. McCaffrey; Van Brookhoven v. Kennedy,* 125 *N. J. L.* 178 *(Sup. Ct.* 1940)*;* affirmed, *Id.* 507 *(E. & A.* 1941)*; Moriarity v. Board of Education of Garfield,* 133 *N. J. L.* 73 *(Sup. Ct.* 1945)*;* affirmed, 134 *N. J. L.* 356 *(E. & A.* 1946)*; City of Orange v. Goldberg, supra.*

It is the general rule that there cannot be a *de facto* officer without a *de jure* office. This is the principle that distinguishes the case of *Shibla v. Township Committee of Wall Township,* 136 *N. J. L.* 506 *(Sup. Ct.* 1948)*;* affirmed, 137 *N. J. L.* 692 *(E. & A.* 1948). The appointment of one to an office or position having no legal being ordinarily gives no color of existence to the supposed office or position or color of authority to the appointee. *Toomey v. McCaffrey, supra; United States v. Royer,* 268 *U. S.* 394, 45 *S. Ct.* 519, 69 *L. Ed.* 1011 (1928)*; Buck v. City of Eureka,* 109 *Cal.* 504, 42 *Pac.* 243 (1895)*; Snyder v. Hylan,* 212 *N. Y.* 236, 106 *N. E.* 89 (1914). There is no reason of public policy for a deviation from the rule here. The local creative authority is exerciseable only by ordinance; this process is a condition prerequisite to the existence of an office or position.

Moreover, appellant assumed the claimed office or position under a pretended appointment made November 15, 1945, the eve of the civil service referendum, and so he is within the class of civil servants, assuming the status *arguendo,* not entitled by a specific exception to the protection of *R. S.* 11:21–6, cited *supra.* The petition for the adoption of the Civil Service Act was filed May 15, 1945. See *Blum v. Civil Service Commission,* 129 *N. J. L.* 75 (*E. & A.* 1942).

The judgment is affirmed.

*For affirmance*—Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—5.

*For reversal*—Justice WACHENFELD—1.