**SOUTHWESTERN PUBLISHING COMPANY, Southwestern Radio and Television Company, Appellants,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**American Television Company, Inc., Intervenor.**

**No. 13456.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 17, 1957.

Decided April 4, 1957.

Petition for Rehearing Denied May 29, 1957.

---

Mr. J. Roger Wollenberg, Washington, D. C., with whom Mr. Andrew G. Haley, Washington, D. C., was on the brief, for appellants.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, Gén. Counsel, Federal Communications Commission, Daniel R. Ohlbaum and John J. O'Malley, Jr., Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Arthur Scheiner, Washington, D. C., with whom Mr. Benedict P. Cottone, Washington, D. C., was on the brief, for intervenor.

Before EDGERTON, Chief Judge, and WILBUR K. MILLER and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellants are Southwestern Publishing Company and its wholly-owned subsidiary, Southwestern Radio and Television Company, operator of a UHF television station at Fort Smith, Arkansas. Intervenor, American Television Company, holds a construction permit for a VHF television station in that city. An understanding of the controversy before us requires a short excursion into some background facts.

American applied for its construction permit on February 6, 1952. Several months later, a competing application was filed by one Hernreich. The two ap-

plications were set for comparative hearing but, before completion of the hearing, a "merger" was effected whereby Hernreich received an option to buy from H. S. Nakdimen, sole stockholder of American, half of that company's stock. Hernreich took a dismissal of his application and, on June 3, 1954, the Commission granted American the construction permit.

Instead of commencing construction of the station, Nakdimen and Hernreich negotiated with the principals of appellants with respect to a possible assignment of the construction permit. Eventually an agreement was made whereby, conditioned upon Commission approval, American's construction permit would be assigned to Southwestern Publishing in return for certain payments to American, Nakdimen and Hernreich. On December 20, 1954, American and Southwestern Publishing jointly applied to the Commission for approval of the assignment.[1] A week later, American applied for an extension of its construction permit, which at that time had only about a month to run.

In May 1955, the Commission set down both applications for hearing on the issue of possible "trafficking" in the permit. On October 3, 1955, after hearing, the hearing examiner issued an initial decision looking toward grant of both applications. The assignment contract, which originally ran only to February 1, 1955, was repeatedly renewed, the last expiration date being April 1, 1956.

On December 20, 1955, the entire picture was changed by the death of Mr. Nakdimen. American and Hernreich refused any further extension of the assignment contract, apparently electing to proceed with construction on their own account. Southwestern Publishing, which had been content to seek an assignment from American when Nakdimen was its principal, now took the view that, with his death, American was no longer a qualified permittee. On April 10, 1956,

American and Southwestern Publishing filed the petitions which are here involved. American's petition requested dismissal of the assignment application, immediate grant of an extension of its construction permit, and Commission consent to a transfer of control of American from Nakdimen to Mrs. Nakdimen as administratrix of his estate. Southwestern Publishing's petition agreed that the assignment was a dead letter, asking that the initial decision which had approved both the assignment and an extension of the construction permit be set aside. It further requested that the record be reopened for the taking of evidence as to American's present qualifications to construct and operate the station and that any petition for approval of transfer of control of American be consolidated for hearing with the extension application. If the extension of American's construction permit should be denied and the channel thrown open again, Southwestern Publishing proposed to file an application on its own account. Southwestern Publishing's petition alleged that Nakdimen had been the very heart of American's proposal in that he had not only been its sole stockholder, but had also embodied all of its broadcast experience, was to have been the general manager of the station and was to have obtained the necessary financing. Without Nakdimen, the petition alleged, it did not appear who in American could or would supervise the construction of the station or its operation, if constructed, and there was nothing to indicate the ability of his estate to finance the construction of the station.

On June 22, 1956, and July 3, 1956, the Commission released the two orders which are the subject of this appeal. In the June 22 order, the Commission ruled that (1) by reason of the expiration of the assignment contract, all the pleadings filed by Southwestern Publishing became moot and must therefore be rejected; (2) Southwestern Publish-

---

1. Southwestern Publishing informed the Commission that, if the assignment were approved, it would abandon the UHF station then being operated by its subsidiary.

ing had no standing as a party in interest when it filed its April 10 petition and all subsequent pleadings; and (3) the public interest, convenience and necessity would be served by granting an extension of American's construction permit. The July 3 order approved "involuntary" transfer of control of American to Mrs. Nakdimen.

The Commission argues that its orders were proper and that, even if they were not, we have no jurisdiction to review them because the appellants lack standing to appeal.

We consider first the July 3 order which seems to us to present no great difficulty. The order was issued by the Chief of the Broadcast Bureau under a delegation of authority from the Commission. The transfer thus consented to was "to a person or entity legally qualified to succeed to the foregoing interests under the laws of the place having jurisdiction over the estate involved." 47 C.F.R. § 1.323, 1 Pike & Fischer Radio Reg. 51:214. The Commission's form No. 316 used in connection with such transfers is a short form application omitting many of the inquiries of the form used in applying for consent to a *voluntary* transfer of control. The action complained of is merely a temporary arrangement not involving ultimate disposition or control of the stock of the permittee.[2] Even if appellants have standing to appeal, they do not show that this action was erroneously taken.

The June 22 order extending the construction permit is another matter. In extending the permit over Southwestern Publishing's objections and dismissing the latter's petition, the Commission gave no consideration to the substance of the objections. It concluded merely that, since the petition had been filed nine days after expiration of the assignment contract, Southwestern lacked standing as a party, even though it had not yet been dismissed from the proceeding at that time.

In view of the Commission's conclusion, we do not consider the validity or force of the substantive allegations of Southwestern Publishing's petition. That it was the Commission's duty to consider them, however, seems to us beyond question. Even granting that a party to a proceeding may, by change of circumstances, lose his status, he remains a party, with all the rights of a party to file pleadings, until the Commission dismisses him from the proceedings. The petition was, therefore, properly filed and its allegations were before the Commission. Even if the Commission thereafter dismissed Southwestern Publishing from the case, it should not close its eyes to the public interest factors raised by the petition already on file. In Clarksburg Publishing Co. v. Federal Communications Comm., 1955, 96 U.S.App.D.C. 211, 215, 225 F.2d 511, 515, dealing with § 309(c) of the Communications Act, 47 U.S.C. § 309(c), we said: "The statute contemplates that, in appropriate cases, the Commission's inquiry will extend beyond matters alleged in the protest in order to reach any issue which may be relevant in determining the legality of the challenged grant." The situation where the challenging allegations have been specifically brought to the Commission's attention by a party who is thereafter dismissed from the proceeding is an a fortiori case.

But is is argued that even if the Commission was wrong to close its eyes to those matters, we are powerless to correct the case because there is no appellant with standing to bring the error before us.

So far as the parent company, Southwestern Publishing, is concerned, the Commission argues that it is not a "person who is aggrieved or whose interests are adversely affected by" the extension of the construction permit, within the meaning of § 402(b) of the Act, 47 U.S.C. § 402(b). There is no dispute that likelihood of economic injury confers

---

2. Form 316 states that it " * * * does not cover assignments (or transfers) from the Executor, Administrator or other court appointed officers to the ultimate beneficiary."

a right of appeal under that section. Federal Communications Comm. v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 477, 60 S.Ct. 693, 84 L.Ed. 869; Elm City Broadcasting Corp. v. United States, 1956, 98 U.S.App.D.C. 314, 318, 235 F.2d 811, 815, and cases there cited. But the economic injury that may result from the Commission's action would be suffered directly by Southwestern Radio, the UHF licensee and wholly-owned subsidiary of Southwestern Publishing, and only derivatively by the parent. While the quantum of "interest" or "aggrievement" which a parent company must show to seek review of administrative action under such a statute as § 402(b) is not necessarily as great as it would need to show to maintain suit for an injury to its wholly-owned subsidiary, American Power & Light Co. v. Securities & Exchange Comm., 1945, 325 U.S. 385, 390–391, 65 S.Ct. 1254, 89 L.Ed. 1683; City of Pittsburgh v. Federal Power Comm., 1956, 99 U.S.App.D.C. 113, 237 F.2d 741, 746–748; Associated Industries v. Ickes, 2 Cir., 1943, 134 F.2d 694; Cf. Schenley Distillers Corp. v. United States, 1946, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181, the merely derivative interest it has in its subsidiary's injury does not satisfy the standard. Cf. American Power & Light Co. v. Securities & Exchange Comm., supra. The appeal of Southwestern Publishing must accordingly be dismissed.

■■ There is no dispute that Southwestern Radio, the subsidiary, would have had standing to appeal if it had been a party below[4] or if, though not a party below, it had petitioned for rehearing as provided by 47 U.S.C. § 405. Since it is the subsidiary company that would suffer the injury, the appropriate procedure would have been for that company, as soon as the assignment contract expired, to petition the Commission for leave to intervene to oppose the extension, or, within thirty days of the June 22 order, to petition for rehearing under § 405. Such petitions, to be sure, would have been addressed to the discretion of the Commission[5] and denial by the Commission could only be reversed for abuse of discretion. Coastal Bend Television Co. v. Federal Communications Comm., 1956, 98 U.S.App.D.C. 251, 255, 234 F.2d 686, 690; Kentucky Broadcasting Corp. v. Federal Communications Comm., 1949, 84 U.S.App.D.C. 383, 386–387, 174 F.2d 38, 41–42. But, in the circumstances of this case, the Commission could not, with proper regard for its duty to protect the public interest, have denied either of such petitions. Since, however, Southwestern Radio did not seek to become a party below and did not seek rehearing as a statutory condition precedent to invoking our jurisdiction, its appeal, like that of its parent, must be dismissed.

Appeals dismissed.

---

4. Southwestern Radio and Television Company did not formally intervene in the proceedings before the Commission. It did, however, formally join as a signatory in its parent's April 27 response to American's petition and in the May reply to the oppositions which had been filed to Southwestern Publishing's petition. Appellants contend that the Commission failed to rule on whether or not Southwestern Radio was a party and completely disregarded the fact that it had signed two pleadings. We do not think the Commission was called upon to discuss the effect of what, in the absence of a petition to intervene, appeared to be merely gratuitous signatures.

5. Intervention *as of right* by the subsidiary company was barred by the terms of 47 U.S.C. § 309(b) in June of 1955, such intervention being restricted to the time "not less than ten days prior to the date of hearing." A petition for rehearing, as well, is addressed to the Commission's discretion, 47 U.S.C. § 405.