**STATE BANKING BOARD OF TEXAS et al., Appellants,**

v.

**Malcolm McCULLOCH et al., Appellees.**

**Malcolm McCULLOCH et al., Appellants,**

v.

**STATE BANKING BOARD OF TEXAS et al., Appellees.**

Nos. 10584, 10587.

Court of Civil Appeals of Texas.    Austin.

July 2, 1958.

Rehearing Denied Oct. 8, 1958.

■■■■■■■■■■

———◆———

McKay & Avery, Austin, Baker, Botts, Andrews & Shepherd, Thos. M. Phillips, Rush Moody, Jr., Houston, for McCulloch et al.

Will Wilson, Atty. Gen., James N. Ludlum, First Asst. Atty. Gen., Fred B. Werkenthin, Lawrence Jones, Houghton Brownlee, Jr., Asst. Attys. Gen., Looney, Clark, Moorhead & Mathews, Austin, Vinson, Elkins, Weems & Searls, J. Evans Attwell, Houston, for State Banking Board of Texas et al.

GRAY, Justice.

These appeals are from the same judgment and may be disposed of by one opinion.

The questions presented pertain to the action taken by the State Banking Board on the separate applications of Malcolm McCulloch and associates (sometimes referred to as the McAshan application) and T. A. Robinson and associates filed with the Board for the issuance of a State bank charter. The bank to be known as the Meyerland State Bank and to be located in the vicinity of the Meyerland Plaza Shopping Center in the southwest portion of the City of Houston.

On June 20, 1957, both applications were denied but on motions for rehearing they were both granted August 1, 1957, however on August 2 a majority of the Board rescinded the August 1 action by granting the application of the Robinson group and rejecting that of the McCulloch group.

The McCulloch group filed two suits, the first to set aside the August 2 order, and the second to set aside the August 1 order insofar as it granted the application of the Robinson group. The Board and the Robinson group were made parties defendant. The two suits were consolidated and, at a nonjury trial, judgment was rendered striking down the August 2 order and sustaining that of August 1.

The Robinson group has appealed from that part of the trial court's judgment striking down the August 2 order, this being our Cause No. 10,584. The McCulloch group has appealed from that part of the trial court's judgment sustaining the August 1 order insofar as it grants the application of the Robinson group, this being our Cause No. 10,587. The Board has appealed and contends that the August 2 order is valid and is supported by substantial evidence. Generally the Board is aligned with the Robinson group.

As appellants in Cause No. 10,584 the Robinson group say that the August 2 order is valid and that the trial court erred in striking it down and erred in sustaining the August 1 order insofar as it granted the application of the McCulloch group because on that date that group had not complied with Art. 342–305 of the Texas Banking Code, Vernon's Ann.Civ.St. art. 342–305. They do not waive their rights under the August 1 order.

The McCulloch group as appellees in Cause No. 10,584 and as appellants in Cause No. 10,587, challenge the authority of the majority of the Board to make the August 2 order and say that it violates due process. They assert their rights to a charter under the August 1 order to the exclusion of the Robinson group because: their application was first filed; the evidence does not show justification for two banks in the same area, and the August 2 order violates the statutes and the rules of the Board.

It is apparent that the August 1 order and the trial court's judgment sustaining it, if given effect, authorizes two banks, each under the name of the Meyerland State Bank, and both to be located in the same area.

Necessarily our attention is first directed to the August 2 order. We will relate

the history of the proceedings and first dispose of Cause No. 10,584.

On January 31, 1957, a representative of the McCulloch group filed with the Commissioner an unexecuted carbon copy of a charter application form for Meyerland State Bank. On February 9, 1957 this form was executed and acknowledged and on February 11, 1957 it was filed. This application was amended and filed March 4, 1957.

On January 14, 1957, a representative of the Robinson group wrote a letter to the Commissioner stating that group expected to file a charter application for a bank and that they would be ready to file it in April, 1957. Their application was filed however on February 15, 1957.

The two applications were heard together in May, 1957, and on June 20, 1957 both were rejected. The Robinson group first filed a motion for rehearing and later such a motion was filed by the McCulloch group. The Board had no rules or regulations with respect to setting aside its prior orders, however on July 11, 1957, at the regular July meeting of the Board, a majority of the Board voted for the following motion:

"Mr. Wilson made a motion, which was seconded by Mr. James, to grant a rehearing and reconsideration of the two Meyerland State Bank, Houston, Texas, applications, the decision of the Board to be based on briefs filed by both groups within ten days from this date."

The Commissioner voted against the motion. The minutes of this meeting further recite:

"The Board discussed the advisability of adopting certain rules and regulations with respect to procedure and rehearings on applications, and Mr. Wilson stated that he would draw up a set of rules and regulations and present the same to the Board for dis-

cussion and consideration at the next meeting.

"Mr. Wilson made a motion, which was seconded by Mr. James, to grant a rehearing and reconsideration of the two Meyerland State Bank, Houston, Texas, applications, the decision of the Board to be based on briefs filed by both groups within ten days from this date. Mr. Falkner voted in the negative feeling that the Board is setting an unsound precedent in taking such action, * * *."

On August 1, 1957, on rehearing, both applications were granted. On that day and at about 4:30 P.M. Member Wilson called Commissioner Falkner:

"A. He said that he would like to have a meeting of the Board the next morning and withdraw his vote on the Meyerland application.

"Q. Did he indicate which application he wanted to withdraw on, or anything of that sort, sir? A. No."

The Commissioner advised Wilson to make arrangements with Member James and to come on down. On August 2 the Board met with all members present; however, when the matter of reconsidering the applications came on to be heard the Commissioner left the meeting and did not participate. The majority of the Board reconsidered the two applications and granted that of the Robinson group and denied that of the McCulloch group.

We quote from the Minutes of the meetings of August 1 and August 2 respectively:

"Pursuant to the granting of a rehearing July 11, 1957, and the filing of additional briefs in support of the applications, the two applications filed under the names of Meyerland State Bank, Houston, Texas, and Meyerland State Bank, 4800 Beechnut Street, Houston 25, Texas, the first named being executed and filed with the Commissioner on March 4, 1957, by

Malcolm McCulloch et al and purporting to be an amendment to a previous application filed by Harris McAshan et al, and the second named being executed and filed with the Commissioner on February 15, 1957, by T. A. Robinson, Jr., et al, the first named being sometimes referred to as the 'McAshan Application' and the second named being sometimes referred to as the 'Robinson Application,' were presented to the Board. Both applications were considered and discussed at the same time and the evidence submitted by both parties in support of such applications was considered at such time, and after a full discussion of the applications and the evidence the vote was then taken. The Board proceeded to vote on the five factors of law as follows:

"McAshan Application

| | "James | Wilson | Falkner |
|---|---|---|---|
| "1. Public necessity | Yes | Yes | No |
| "2. Adequacy of capital | Yes | Yes | Yes |
| "3. Volume of business | No | Yes | Yes |
| "4. Experience of officers and directors | Yes | Yes | Yes |
| "5. Good faith | Yes | Yes | Yes |

"Robinson Application

| | "James | Wilson | Falkner |
|---|---|---|---|
| "1. Public necessity | Yes | Yes | No |
| "2. Adequacy of capital | Yes | Yes | Yes |
| "3. Volume of business | Yes | Yes | Yes |
| "4. Experience of officers and directors | Yes | Yes | Yes |
| "5. Good faith | Yes | Yes | Yes |

"The five factors of law having been determined in the affirmative by majority vote in the case of both applications, both applications for a charter were approved and the Commissioner authorized to permit the applicants to open and operate the banks applied for as provided by law.

&ast; &ast; &ast; &ast; &ast; &ast;

"The State Banking Board &ast; &ast; &ast; convened in a special meeting at 10:00 a. m. at the office of the State Banking Department, Austin, Texas, for the purpose of reconsidering the votes of the two applications filed under the name of Meyerland State Bank, Houston, Texas, each application showing that the location of the bank would be in Meyerland Plaza Sector of Houston, Texas;

"Member Will Wilson made a motion to reconsider the votes by which both applications were approved on August 1. This motion was seconded by Member Jesse James and the motion carried by a majority vote, with Members Wilson and James voting in the affirmative and Member Falkner not voting.

"Member James made a motion to grant the charter to the Meyerland State Bank &ast; &ast; &ast; in accordance with the application executed and filed by T. A. Robinson &ast; &ast; &ast;.

"A vote was called for upon the five factors of law as provided in Article 5, Chapter 3 of the Banking Code, which resulted in the following votes:

| | "James | Wilson | Falkner |
|---|---|---|---|
| "1. Public Necessity | Yes | Yes | Not voting |
| "2. Adequacy of capital | Yes | Yes | Not voting |
| "3. Volume of business | Yes | Yes | Not voting |
| "4. Experience of officers and · directors | Yes | Yes | Not voting |
| "5. Good faith | Yes | Yes | Not voting |

"The five factors of law having been determined affirmatively, Member Wilson then seconded the motion of Member James to grant this application for charter, with Members Wilson and James voting 'Aye' on this motion and Member Falkner not voting. The application for the above charter having been approved, the Commissioner was instructed to permit the bank to open and operate as provided by law.

&ast; &ast; &ast; &ast; &ast; &ast;

"Member Wilson then made a motion to decline the application filed by Harris McAshan and others, later amended and filed by Malcolm McCulloch, &ast; &ast; &ast;.

"A vote was called for upon the five factors of law as provided in Article 5, Chapter 3 of the Banking Code, which resulted in the following vote:

| "James | Wilson | Falkner |
|---|---|---|
| "1. Public Necessity | Yes | Yes | Not voting |
| "2. Adequacy of capital | Yes | Yes | Not voting |
| "3. Volume of business | No | No | Not voting |
| "4. Experience of officers and directors | Yes | Yes | Not voting |
| "5. Good faith | Yes | Yes | Not voting |

"The factor of volume of business having been determined adversely, Member James seconded Member Wilson's motion to decline this application and the application was declined with Members James and Wilson voting 'Aye' and Member Falkner not voting."

The State Banking Code, Arts. 342–101 to 342–911, Vernon's Ann.Civ.St., provides a complete system of laws for the organization of State banks in this State. Art. 342–101. Art. 342–305 provides that charter applications shall be filed with the Commissioner on forms prescribed by him and makes further provisions relative to such filing. This article provides that:

"In considering any such application, the State Banking Board shall, after hearing, determine whether or not:

"1. A public necessity exists for the proposed bank.

"2. The proposed capital structure is adequate.

"3. The volume of business in the community where such proposed bank is to be established is such as to indicate profitable operation of the proposed bank.

"4. The proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable.

"5. The applicants are acting in good faith.

"Should the State Banking Board determine any of the above issues adversely to the applicants, it shall reject the application. Otherwise such Board shall approve the application and the Commissioner shall, when the capital has been paid in in cash and the franchise tax paid, deliver to the incorporators a certified copy of the articles of association, and the bank shall come into corporate existence."

Art. 342–115 authorizes the Board to promulgate rules and regulations relative to the hearing of applications for State banks.

■ The Board was authorized to consolidate the two applications for hearing in the proper dispatch of its business. 73 C.J.S. Public Administrative Bodies and Procedure § 118, p. 437. The most, if not all, of the evidence heard by the Board (except that pertaining to the proposed officers) on one application was necessarily relevant to the other and, as shown by the Minutes supra, the applications were voted on separately, the McAshan (McCulloch) application being voted on first at the August 1 meeting and second at the August 2 meeting. These votes were taken on the applications for rehearings for which the Board had neither rules nor regulations.

The McCulloch group contend that their application was filed first and that under the rules of the Board it was entitled to be first considered. They also say that for this reason their right to a bank is prior to the right of subsequent applicants. As supporting their argument they cite a resolution of the Board dated May 1, 1947, which provides:

"I.

"The first Wednesday of each month shall be the regular meeting date of the Board.

"II.

"All completed applications on hand that date shall be presented in order of filing.

"III.

"Hearings in respect to applications on hand shall begin promptly at 9:00 a. m. and continue in the order of filing dates until all hearings are completed."

Prior to August 2 the McCulloch application was voted on first; however, we are here concerned with motions for rehearings for which the Board had no rules or regulations. Be that as it may two applications were pending before the Board and the evidence and briefs in behalf of each were also before the Board.

■ The Board was authorized to consider the priority of the filing of the applications but it could not make such priority the controlling factor in arriving at a final decision as between them. Kentucky Broadcasting Corp. v. Federal Communications Com'n, 84 U.S.App.D.C. 383, 174 F.2d 38.

■■ The Board was not only authorized but it was its duty to decide whether both applications should be granted or both rejected or whether one should be granted and the other rejected and, if so, which one. In these respects the Board is vested with discretion in deciding from the evidence the five elements set out in Art. 342–305, supra, and if any of such elements are found adversely to the applicant the application must be rejected. In any event the most that appellants' contention supports is a right to a first decision, it cannot create a right to a bank if the proof as to any one of the prescribed elements fails. It will be noted that the element "Volume of business" received a negative vote on August 2. This vote then required the McCulloch application to be denied. Art. 342–305, supra. Also it will be noted that Member James cast a negative vote on that element August 1 when the McCulloch application was considered and on that date all members voted affirmatively on that element as to the Robinson application. These facts suggest that on August 1 two members of the Board were of the opinion that there was a sufficient volume of business in the area to justify two banks but Member James was of the opinion that such would justify granting the Robinson application but not McCullochs'. This also suggests that James was influenced not alone by the volume of business but rather by to whom was it available and that he concluded that it was available to the Robinson group but not to the McCulloch group in an amount to indicate profitable operation of a bank by that group. It is not our province to search out reasons that prompted a member to vote as he did but only to determine whether there is evidence to support the vote.

The evidence shows that T. A. Robinson had an important, if not the major, part in the development of the Meyerland area and that he together with Mr. Meyer, the original owner of the land constituting Meyerland, started development of the area and that he had long contemplated establishing a bank there. As Member Wilson stated it, Robinson furnished "the risk capital." If this evidence prompted Member James to consistently vote in favor of the Robinson application on the element of volume of business and against that element on the McCulloch application we cannot say that the evidence does not support his view. The same must be said of Member Wilson who changed his mind on August 1 and voted with James on August 2.

If we should agree with the McCulloch group that there was a volume of business in the area sufficient to support one bank, that their application was first filed with the Board and that it had priority for consideration by the Board we cannot set aside the order of August 2 on those grounds alone. We think they must not only show the existence of such volume of business as would justify granting their application but also must convince the Board and secure its favorable finding on that element. Otherwise the Board would have no discretion as to the merits of applications or the facts developed by the

evidence at the hearing but its action would be controlled by the order of the filing of applications which according to McCulloch's view would preempt the right to a bank in the area to the exclusion of subsequent applications.

The McCulloch group were entitled to have their application considered and disposed of. This was done and they failed to discharge their burden of securing affirmative findings on the five required elements set out in Art. 342–305, supra, and failing in this that article made it mandatory that their application be rejected.

We hold that the procedure of August 2 and the order of disposing of applications on that date did not deny substantial rights to McCulloch.

The validity of the August 2 order must be tested by the control of the Board over its order of August 1. As noted supra all parties, by participating without question in rehearings had on the order of June 20, have assumed that the Board had jurisdiction to reconsider its prior orders. This is true even though the Board had no rules or regulations as to setting aside its prior orders. The Commissioner was of the opinion that the proper method of review of the order of June 20 was by appeal under Art. 342–115 rather than by motion for rehearing. He appears to have been of the same opinion on August 2, however he participated in the hearings on August 1.

The order of August 1 had been voted but it had not been entered in the Board's Minutes when Wilson called for its reconsideration, neither had it been so entered on August 2. Articles of association had not been delivered and rights under the August 1 order had not vested.

The contention of McCulloch to the effect that the Board lost jurisdiction of its August 1 order and could not reconsider it on August 2 is not consistent with that group's position, as well as the position of all other parties except the Commissioner, as to the

order of June 20. The McCulloch group do say that on August 1 the Commissioner, by telegram, notified them of the Board's action of that date. We find nothing in the Code prescribing such act as a duty of the Commissioner and do not find anything in the record to suggest that such notice was given by order of the Board. This then was a voluntary act of the Commissioner and not the act of the Board.

It is necessary to decide whether the August 1 order became final prior to the August 2 order. In South Taylor County Independent School District v. Winters Ind. Sch. Dist., 151 Tex. 330, 249 S.W.2d 1010, 1012, the court said:

"The rule is generally accepted that officers of a board or of a department have the power to rescind an action of theirs on a matter that has not become final. Any other rule would deprive such officers of the power to modify or rescind an order once made, no matter how erroneous or unwise it might be."

The rule applicable here is stated by Judge Speer in his Law of Banks and Banking in Texas, Sec. 28, to be that:

"The Banking Board may rescind its order approving and authorizing the delivery of a charter at any time before the actual delivery has been made by the Commissioner."

Here no charter had been delivered.

It must be said that the Board is an administrative agency authorized by the Legislature to exercise quasi judicial powers in hearing and determining applications for State bank charters. As such administrative agency then the Board had the right to reconsider its decision if such decision had not become final. South Taylor County Independent School District v. Winters Ind. Sch. Dist., supra. The Code does not deny this right to the Board but gives it the right to promulgate rules and regulations to govern its proceedings. Art. 342–115, supra. Without promulgating such rules the Board

at the instance of the parties here had established a precedent for reconsidering its prior action. Order of June 20.

The order of August 1 had not become final on August 2, rights under it had not vested and to this extent it was interlocutory and the Board had not lost jurisdiction over it. Authorities, supra. 42 Am.Jur., p. 535, Sec. 174.

The August 2 meeting of the Board was called August 1 and if the Board's jurisdiction in the exercise of its quasi judicial functions is subject to the rule applicable to courts its jurisdiction over its order of August 1 was not lost. A court has "authority on its own motion, and without notice to the interested parties, to set aside the judgment rendered at the same term. Cohen v. Moore, 101 Tex. 45, 104 S.W. 1053." Brannon v. Wilson, Tex.Civ.App., 260 S.W. 201, 203; Dazey v. Dazey, Tex.Civ.App., 265 S.W.2d 166.

It is our opinion that notice was not necessary for the Board to rescind its action of August 1; that the action of the majority of the Board constituted action by the Board, and that the negative finding of the majority as to volume of business required that McCulloch's application be rejected.

What has already been said is sufficient to show that all parties here contend that the Board's finding of public necessity for one bank in the Meyerland area is reasonably supported by substantial evidence. Therefore there is no contested issue as to that matter before us. We have already discussed evidence sustaining the negative finding of the Board on August 2 as to volume of business and we have sustained the Board's order of date. This order rescinded the order of August 1 and for which reason that order does not exist and is not before us for review. This holding requires that the appeal in Cause No. 10,587 be and it is dismissed.

There is brought forward as a part of the statement of facts in Cause No. 10,587 the proceedings had in Robinson's applications for temporary and mandatory injunctions had on September 17 and 18, 1957. Both applications were denied. The Robinson group have filed their motion to strike this evidence. In view of our dismissal of the appeal in Cause No. 10,587, the motion is dismissed.

The judgment of the trial court is reversed and judgment is here rendered sustaining the August 2, 1957 order of the Board.

No. 10,587 Dismissed.

No. 10,584 Reversed and rendered.

HUGHES, Justice.

I respectfully dissent. In my opinion the McAshan group alone is entitled to receive a charter for the "Meyerland State Bank."

It filed its application first. Its application was approved first and no legal or equitable reasons are found by me to justify the Board in vacating these priorities.

The majority of the Board having done just that it is my opinion that such action is arbitrary.

A time honored equitable maxim is: "Where there are equal equities, the first in time shall prevail." 17 Tex.Jur. p. 37.

More important however is the modern rule applicable to the specific problem here found in Michie on Banks and Banking, Vol. 1, pp. 126–127:

"It is generally held that when there has been a compliance with the statutory and constitutional prerequisites for the organization of a bank, then the duty of the state officer to issue the certificate is ministerial and he cannot refuse to grant the charter * * * *Even where equally meritorious applications for charter for several banks in the same community are pending before the charter board at the same time,* and the charter board

determines against the necessity for more than one bank, *there is still no discretion; the application first presented should be granted.*" (Italics mine.)

See also Schaake v. Dolley, 85 Kan. 598, 118 P. 80, 87, 37 L.R.A.,N.S., 877, where the Kansas Banking Board applied the same principle and the Court in sustaining its action stated:

"Two equally deserving applications were pending before the charter board at the same time. The statute makes no provision for a choice in such cases, and the charter board did right in granting the one first filed."

At a Board meeting on May 2, 1957, Commissioner Falkner, in the presence of the full Board and the McAshan and Robinson groups, stated in regard to these applications:

"* * * we had two applications for charters in the same location, that is, the Meyerland area, and the application which was filed first would be heard first."

On June 20, 1957, another Board meeting was held regarding these applications and the official Minutes of that meeting reflect:

"Mr. Falkner reminded the Board that because the McAshan application was filed first, it should be presented and acted on first, and the application was presented to the Board. * * * A vote was called for on all the factors * * *.

"The application filed by T. A. Robinson and his group was then presented to the Board."

This procedure by the Board was in strict accordance with its rules one of which provides:

"All completed applications on hand that date [meeting date] shall be presented in order of filing."

This order of procedure was scrupulously observed by the Board as to these applications until the meeting of August 2 when the Board acted in the absence of its Chairman and considered the Robinson application first. This variance was fatal to the McAshan application because with the Robinson application approved a negative vote on the McAshan application followed as a necessary consequence since all members of the Board were then of the opinion that approval of only one application was authorized. See analysis of voting in majority opinion.

The Board by such action established conclusively, in my opinion, the validity of the August 1 approval of the McAshan application and the invalidity of the August 1 approval of the Robinson application.

There was no change in the evidence or other circumstances surrounding these applications between August 1st and August 2nd.

On August 2nd Commission Falkner branded the August 1st action of the Board as "ridiculous."

On August 2nd Board Member Attorney General Wilson stated:

"Obviously, but one bank can be successful because of a lack of a volume of business to support more than one bank. * * * I do not feel that there should be more than one bank at this place."

Board Member Treasurer Jesse James has consistently voted against authorizing the creation of two banks.

By formal pleading filed herein the Board has stated:

"Defendant Board * * * had an obligation and duty to reconsider such order of August 1 as soon as practicable in view of the fact that the Defendant Board regarded such order as a mistake in that it proposed to approve applications for charters for two banks with the identical same

name located approximately across the street from each other in the same community where the evidence indicated the need for only one such bank at that time."

I agree with the Board that it made a mistake on August 1st; I also agree with the Board that it had, on August 2nd, the authority to correct this mistake.[1]

I only disagree with the Board on where the mistake occurred or the manner in which it was corrected.

The only mistake the Board made on August 1st was in *granting* the *Robinson* application.

As heretofore stated this conclusion is reached by analyzing the actions of the Board alone.

Assuming, as I do, that the Board was factually correct on August 2nd in granting the Robinson application and then in denying the McAshan application solely because the volume of business was insufficient it necessarily follows, the evidence being unchanged, that on August 1st the Board was factually correct in approving the McAshan application and factually *wrong* in approving the Robinson application.

This error, being to me conclusively demonstrated, should be corrected and the only remaining question is: How?

The method used by the Board was to invalidate the valid order and validate the invalid order.

This strange and otherwise inexplicable procedure is accounted for by General Wilson who stated:

"Obviously, but one bank can be successful because of a lack of a volume of business to support more than one bank. Both groups are equally balanced in experience, capital, banking judgment, and good character. In de-

ciding which should have the application, I am motivated primarily in voting for the Robinson group on the grounds that Robinson furnished the risk capital to develop the shopping center."

The Board has adopted a policy, currently in effect, with regard to its consideration of bank charter applications a part of which is:

"We deem it advisable to record herein the fundamental position of the Department of Banking on the subject of charter application * * *. Our authority in the premises must be limited by a careful consideration of all factors which are enumerated in the law; but, as stated, we must not go beyond that enumeration."

The reason assigned by General Wilson is not one which has statutory authority. See pertinent provisions of Art. 342–305, V.A.C.S., majority opinion.

Personalities are properly considered by the Board only in determining the matters mentioned in numbers (4) and (5) of the statutes and as to which both groups received favorable determinations by the Board.

Personalities of the applicants or proposed officers are completely foreign to the showing required under No. 3 of the statutes as to the volume of business in the community where the proposed bank is to operate.

Having quoted General Wilson's reason for his August 2nd votes it is proper to quote from the McAshan group brief its position on the equities referred to by General Wilson:

"The evidence is undisputed that the Meyerland corporation owns the Meyerland Shopping Center and the land comprising the Meyerland residential area; the stock of this corporation is

---

1. Laws of Banks and Banking, Sec. 28, by Judge Ocie Speer (1952); Handlon v.

Belleville, 4 N.J. 99, 71 A.2d 624, 16 A.L.R.2d 1118.

owned by George Meyer's five children and T. A. Robinson, Jr., the Meyers holding 79½ percent. Of the five Meyer children, three are shown as stockholders in the McAshan group and have been quite active in the organization of the McAshan bank. T. A. Robinson, Jr.—holder of 20½ percent of the Meyerland Corporation stock—is the only backer of the Robinson bank among the people owning the Meyerland Corporation, the entity which furnished the 'risk capital' to develop the shopping center."

It is my opinion that the action of the Board on August 2nd was legally arbitrary in the sense that it is unsupported by and contrary to law and established legal principles.

I would, as heretofore indicated, enter judgment sustaining the McAshan application and rejecting the Robinson application.