## TEXAS LIQUOR CONTROL BOARD v. O'FALLON.

### No. 13638.

Court of Civil Appeals of Texas. Dallas.

Aug. 6, 1945.

Rehearing Denied Sept. 28, 1945.

Grover Sellers, Atty. Gen., and Jesse Owens and George W. Barcus, Asst. Attys. Gen., for appellant.

Hughes & Monroe, P. P. Ballowe, and Henry Smith, all of Dallas, for appellee.

PER CURIAM.

This is an appeal from a judgment of a district court of Dallas County, Tex., setting aside an order of the Texas Liquor Control Board canceling the package store liquor permit, or license, granted to Myrtle O'Fallon, because of a sale of liquor on Sunday in violation of law.

The oral testimony before the administrator of the Texas Liquor Control Board reveals that Mr. and Mrs. O'Fallon jointly owned and personally operated Periman Drug Store, located at 3828 Maple Avenue in the City of Dallas, Texas. In the back part of the store building they had a small closet compartment, prescription room, in which was stored, in a locked cabinet, intoxicating liquors possessed for sale under the involved permit or license issued to Myrtle O'Fallon. Mr. and Mrs. O'Fallon each carried a key to the liquor cabinet and they were the only ones authorized to carry such keys and sell liquor from said compartment. On the occasion in question,

Sunday, November 26, 1944, Mr. Uselton, an authorized agent of the Board, purchased a bottle of liquor,—Marimba Rum,—from the liquors within the compartment. The sale was made by Mr. O'Fallon, husband of Myrtle O'Fallon, to whom Mr. Uselton paid $6, represented to be the "Sunday price," and from whom he received the liquor. Mrs. O'Fallon was present in the drug store at the time of such sale; and, when it was delivered, Mr. O'Fallon told Mr. Uselton to conceal the bottle of liquor so that his wife would not see it. Mrs. O'Fallon, her husband, and a number of witnesses sharply controverted the State's evidence of the sale of liquor on the Sunday in question, and related that such sale took place, within legal hours, on Saturday, November 25, 1944; that Mr. O'Fallon was not authorized to sell liquor from the compartment on Sundays, and that, on such days, he did not have a key in his possession with which to unlock the liquor compartment. Mrs. O'Fallon testified:

"Q. Do you permit intoxicating liquor to be kept any where else besides the compartment? A. No, sir.

"Q. Who carried the keys to the package store? A. Mr. O'Fallon and I; there are only two keys.

"Q. Anybody else permitted to have a key? A. No, sir.

"Q. Does Mr. O'Fallon carry a key all the time?" A. I carry both keys on Sunday.

"Q. Why? A. Because I didn't know whether things were going like I wanted to, after great consideration I decided to take out the permit and made up my mind that I knew how I could run it and run it right and I made the statement that there were to be only two of us deal with it; and if it was not done right, I would turn it in. I was not going to do it that way * * *

"Q. And since that permit was granted you have had both keys on Sunday? A. Yes, sir. * * *

"Q. Mr. O'Fallon is authorized by you in the operation of your liquor package store to make sales out of the stock, is he not? A. Yes, sir. * * *

"Q. But Mr. John J. O'Fallon is authorized by you to make sales of liquor under instructions and during legal hours? A. Yes, sir.

"Q. And this date, November 26, and then the second date, December 3, 1944, Sunday, being the dates on which Mr. Uselton testified he made a purchase of rum, those dates have been within the period of time that Mr. O'Fallon has been authorized to make sales? A. Yes, sir."

The record before the administrator further reveals that in January, 1944, Mr. John O'Fallon was a licensed permittee to sell liquors at the place here in question, and on complaint by Mr. Uselton he pleaded guilty to violation of selling liquor to him on a Sunday, resulting, on January 20, 1944, in the Texas Liquor Control Board canceling his license, or permit, to sell liquor at that place. Thereafter, on January 21, 1944, Mr. and Mrs. O'Fallon married, and in May, 1944, Mrs. O'Fallon made application and secured a permit, or license, in her name, to sell liquor at the place formerly licensed to her husband. She testified that the license fee and the stock of liquors were purchased by her out of her separate estate and that her husband had nothing to do with the liquor investment. It was her separate enterprise.

■ On the record and due consideration of all evidence in defense, in which Mrs. Myrtle O'Fallon, her attorney, and a corps of witnesses testified contesting the State's cause, we think, the evidence shows undisputably that the administrator had sufficient evidence before him to authorize the cancellation of appellee's license and that he did not act arbitrarily or capriciously in doing so.

■ A permit, or license, to sell liquor is a mere personal privilege, under the terms of the act itself; all such permits are revocable for causes therein stated, subject to appeal as provided by the act. Such permit, or license, does not constitute property. The acceptance constitutes an expressed agreement and consent on the part of the permittee, or licensee, that the Board or any of its authorized representatives, or agents, may perform any duty therein imposed upon them. P.C. Art. 666—13, Vernon's Ann.P.C. The cancellation of a permit, or license, is a specifically authorized remedy for violation of any cause inhibited by the law, requiring the Board or Administrator, after due notice to the permittee or licensee, to hear and determine whether the permit should be canceled or suspended and prescribing the procedure therefor, Art. 666—12a; and the act provides an appeal from any order of the Board or administrator refusing, canceling, or suspending such permit or li-

cense, to the district court of the county in which the aggrieved licensee or permittee may reside. The proceedings are not criminal and on appeal trial is de novo under the same rules as authorized in civil suits; the licensee has the burden of proving there was no evidence introduced at the hearing before the Board's administrator to substantiate findings of the administrator, or that there were no facts upon which the order could be based. The order of the administrator is presumed prima facie valid. Texas Liquor Control Board v. Jones, Tex. Civ.App., 112 S.W.2d 227. The sale of intoxicating liquors on Sunday is cause for cancellation of such permit.

█▌ We think it is clear that the intention of the comprehensive statutory provisions of the involved liquor law is that the decision of the Board or administrator, upon the granting, refusing or canceling of any permit or license is final and conclusive, if the decision in such matter finds any reasonable basis in fact and are not shown to be arbitrary and unreasonable. Courts cannot substitute their judgment for that of the administrative agencies unless it be shown that their decision was without foundation on the evidence, or was arbitrary or capricious.

█▌ It is settled that the orders of the Board and administrator in such cases are prima facie evidence of the reasonableness and correctness thereof and, while the statute authorizes an appeal for review of the orders, yet, on such appeal, the power of the trial court is to determine whether the Board or administrator acted within the statutes; whether the complained of order is sustained by substantial evidence; and whether the agency acted arbitrarily or capriciously in the performance of its administrative duties. The credibility of witnesses and the weight to be given their testimony is exclusively within the province of the Board or administrator trying the cause, and their conclusions cannot be set aside by a trial court on appeal. It is not sufficient for a trial court to set aside the order that the preponderance of the evidence favors the aggrieved party, or that the evidence raises a reasonable doubt as to the guilt of the party accused. If there is substantial evidence on which the Board or administrator reached their conclusion and their order is based thereon, the district court on appeal cannot substitute its judgment for that of the State's authorized tribunal in such matters. "Substantial evidence" within the meaning of the statutes is such evidence as will convince reasonable men, and on which such men may not reasonably differ; that is, competent evidence as a reasonable mind might accept as adequate to support a conclusion. In the case at bar, the administrator based his conclusion on the record presented on sworn testimony of witnesses for both sides of the controversy, and the weight he gave thereto. It cannot be said that the order canceling the permit, because of sale of liquor on Sunday, as related by the witness Uselton, is based on unworthy or perjured testimony, and that the administrator's action was without evidence to support it.

█ Appellee challenged in the court below, and presents here in counter-points, that the administrator acted arbitrarily and capriciously in failing to consider affidavits offered in her behalf contradicting the testimony of Mr. Uselton. There is nothing in the record to show that the administrator did not consider the affidavits; they were offered in evidence and read to the administrator, or such part of them as appellee's attorney wished to read. The affidavits are not in the record, and no showing made to have them in court. The record shows that the two affidavits in question were last seen in possession of appellee's attorney, who appeared for her before the administrator. The attorney was not called upon to produce the affidavits; or that a continuance or postponement of trial be granted to secure them. We cannot say under such disclosure that appellee was deprived of a full and complete hearing, or that the administrator failed to give due consideration of all evidence offered on trial of the cause.

The judgment of the court below is reversed and judgment here rendered, sustaining the order of the administrator in canceling the permit.