Albert FARB et al., Appellants,

v.

STATE BANKING BOARD of Texas et al., Appellees.

No. 10824.

Court of Civil Appeals of Texas.

Austin.

Jan. 4, 1961.

Rehearing Denied Jan. 25, 1961.

Butler, Binion, Rice & Cook, Houston, for appellants.

Will Wilson, Atty. Gen., Morgan Nesbitt, Fred B. Werkenthin, Asst. Attys. Gen., for State Banking Board.

Billy B. Goldberg, Houston, Clark, Mathews, Thomas, Harris & Denius, Austin, for T. T. Weisz and others.

GRAY, Justice.

This appeal is from a judgment sustaining orders of the State Banking Board granting a charter to the Southside State Bank and denying the application for a charter to the Stella Link State Bank both of which proposed banks are to be located in the City of Houston.

The case involves separate applications for State bank charters in the same general area of the City of Houston and two orders of the Board.

The organizers of the proposed Stella Link State Bank filed their application for a charter for that bank on April 10, 1959 which application was amended May 4, 1959. On April 14, 1959 an application for a charter for the Southside State Bank was filed and on May 7, 1959 this application was amended. On October 5, 1959 these applications were presented to the Board at its meeting on that date. The minutes

of that meeting, after reciting other proceedings of the Board, recite:

"Mr. Falkner then presented to the Board the application for charter of Stella Link State Bank, Houston, Texas, this bank to have a capital of $250,-000, surplus of $150,000, and reserves of $100,000. * * *"

The minutes then recite the names of the proposed incorporators; that named persons appeared in support of the application; that named attorneys appeared and were the principal speakers for the applicants, and that named parties appeared in opposition to the application. Following the foregoing, the minutes then recite:

"Mr. Falkner also presented for consideration at the same time the application of Southside State Bank, Houston, Texas, this bank to have a capital of $300,000, surplus of $100,000, and reserves of $125,000. * * *"

The minutes then recite matters substantially the same as those recited in connection with the Stella Link application. Following the foregoing recitals the minutes recite:

"At the conclusion of this hearing the Board adjourned for lunch at 1:10 p. m. and reconvened at 2:20 p. m."

Upon reconvening the Board considered business not connected with either of the above applications, set its next regular meeting for November 10, 1959 and adjourned without taking further action on either of the above applications.

We quote from the minutes of subsequent meetings of the Board:

November 10, 1959:

"There was then presented to the Board a letter dated November 9, 1959 over the signature of George W. Rice, Attorney at Law from Houston, of the firm of Butler, Binion, Rice and Cook, requesting that no action be taken on the applications of the Stella Link State Bank and Southside State Bank,

Houston, Texas, until the December meeting. After some discussion with regard to this request: Mr. Falkner made a motion, which was seconded by Mr. James, that action on these two applications be deferred until Wednesday, November 25, 1959, the date designated for a special meeting of the Board. Mr. Wilson did not vote."

December 3, 1959:

"Next the Stella Link State Bank, Houston, Texas application was taken up. Hearing on this application was first held on October 5, 1959, and action on same was postponed to November 10, 1959, again to November 25, 1959, and again to December 3, 1959. Mr. James presented a drawing delivered to him by Mr. Jack Binion of the firm of Butler, Binion, Rice & Cook at Houston, who represents the organizers, which reflected a new location South of the original site, a distance of slightly more than a mile. After some discussion of this application the Board was of the opinion that inasmuch as the newly selected site might conflict with another application now on file or an existing bank in that area, a new application should be requested embracing the new location and an investigation made with respect to various factors considered in connection with the applications for charters for state banks. Mr. Wilson made a motion that this be done. Mr. Falkner seconded the motion, and the vote was unanimous. * * *

"Mr. Wilson then made a motion, which was seconded by Mr. James, to postpone action on the following pending applications for charter until January 7, 1960:

" * * * Stella Link State Bank, Houston, Texas.

"The vote was unanimous. There being no further business to come before the Board, the meeting was adjourned."

On January 8, 1960 the application of the Stella Link group was denied the Board having unanimously voted "No" on the issues of public necessity and volume of business.

The Southside Bank's application was approved November 25, 1959 at a special meeting held on that date. Omitting matters before the Board not relevant here the minutes of that meeting recite:

"The applications of the Southside State Bank, Houston, Texas, on which hearing was held on October 5, 1959, and the Stella Link State Bank, Houston, Texas, on which hearing was held on October 5, 1959, were presented to the Board. The Board took under consideration the Southside State Bank, Houston, Texas application first, and made its findings as follows:

|    |                                | James | Wilson | Falkner |
|----|--------------------------------|-------|--------|---------|
| 1. | Public Necessity               | Yes   | Yes    | No      |
| 2. | Adequacy of capital            | Yes   | Yes    | Yes     |
| 3. | Volume of business             | Yes   | Yes    | No      |
| 4. | Experience of officers and directors | Yes | Yes | Yes     |
| 5. | Good faith                     | Yes   | Yes    | Yes     |

"Upon motion of Mr. Wilson, seconded by Mr. James, the application was approved by majority vote, and the Commissioner was instructed to permit the bank to open and operate as provided by law.

"The application of the Stella Link State Bank, Houston, Texas, was then considered by the Board. Mr. James made a motion, which was seconded by Mr. Wilson, to postpone action on this application until the regular meeting on December 3, 1959. The motion carried by majority vote."

On May 1, 1947 the Board, at a special called meeting, fixed its regular meeting days and resolved:

"All completed applications on hand that date shall be presented in order of filing.

"Hearings in respect to applications on hand shall begin promptly at 9:00 A.M. and continue in the order of filing dates until all hearings are completed. In the event one day is not sufficient time in which to dispose of all applications and hearings the said meeting shall be continued until all are disposed of.

"Nothing herein shall operate to prevent called meetings in the discretion of the Board in respect to deferred decisions or uncontested or emergency matters needing attention."

Sec. 16 of Art. 16, Texas Constitution, Vernon's Ann.St., provides that the Legislature shall by general law authorize the incorporation of corporate bodies with banking privileges, and shall provide a system of State supervision, regulation and control of such bodies for the protection and security of depositors and creditors. Art. 342–901, Vernon's Ann.Civ.St., declares State Banks to be charged with the public interest and places them under State control. Art. 342–115 creates the State Banking Board consisting of the Attorney General, the State Treasurer and the Banking Commissioner and provides that the Board's findings and determinations may be reviewed and set aside by a court of competent jurisdiction. Art. 342–305 provides that applications for charters for State banks shall be filed with the Commissioner on forms prescribed by him and provides that he shall thereupon make a "thorough" investigation and report his findings to the Board. This article then provides that the Board shall, after hearing, determine whether: (1) there exists a public necessity for the proposed bank; (2) the proposed capital structure is adequate; (3) the volume of business in the community where the proposed bank is to be located is such as to indicate profitable operation of the bank; (4) the proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable, and (5) the applicants are acting in

good faith. It is then provided that if the Board determines any of the above issues adversely to the applicants it shall reject the application.

Appellants here present three points. These are to the effect that the trial court erred in affirming the action of the Board because appellants were deprived of due process before the Board since (1) one or more members of the Board had reached a decision prior to the hearing based on considerations other than those established by Art. 342–305, and (2) the application of the Southside group, though filed subsequent to that of appellants, was presented and decided prior to that of appellants. The third point is to the effect that there was not substantial evidence before the Board that "the proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable."

Under their first point appellants say that both the Commissioner and the Attorney General had reached a decision prior to the time their application was heard by the Board.

While the Commissioner was testifying as a witness at the trial appellants had him identify an exhibit which was photostatic copies of instruments in connection with the Stella Link application and which he said contained everything except the investigation report. He identified as his a typed statement appearing in the exhibit and was asked and testified:

"Q. And read to the Court what it says. A. 'Attorneys Binion and Rice, of the George Butler Houston Law Firm, were in the office today to discuss filing an application for a State Bank in Houston at Stella Link and Woodside Plaza on the South Loop. I believe that this is the location Searcy Bracewell has in mind for a bank. Bracewell has a set of papers. They were requested to withhold any action until I had an opportunity to ascertain whether or not this applica-

tion would be in conflict with the Bracewell proposal. They insisted and papers were given to them and they were told that I would be against the application.'

"Q. You had made your mind up on our application before we even filed it, hadn't you? A. Yes, sir."

The Attorney General was asked and testified:

"Q. * * * did you ever commit yourself to vote for Mr. Goldberg or his group? A. No, sir. I never did tell Mr. Goldberg that I would vote for his group. I did encourage him to file the application.

"Q. Did the result of your encouraging him to file that application even though it was filed afterward, influence your vote? A. Well, * *

"Q. (By Mr. Binion) Did it influence your vote? A. I would say that it was one factor I considered.

"Q. You considered that factor in voting for the Goldberg Group, in addition to other evidence, did you not? A. Yes, I did.

"Q. But that was a factor in making you decide your vote for that group against us, wasn't it, Will? A. I wouldn't say it was the final determining factor, but it was one factor."

Appellants do not say that the Commissioner acted capriciously, arbitrarily, fraudulently or without factual basis but say that he had made up his mind prior to the hearing before the Board.

The Legislature, by Art. 342–305, supra, has enjoined on the Commissioner not only the duty of receiving applications for bank charters but also the duties of making an investigation of the application and then reporting his findings to the Board of which he is made a member. The Legislature has not restricted the right of the Commissioner to vote at the hearing after reporting his findings on the application.

The Commissioner received the application and in his report to the Board he said he advised the applicants that he would be against it for the assigned reason that it would be in conflict with the Bracewell application. He did vote "no" on two of the statutory issues and testified at the trial that he had made up his mind on the application before it was filed. The statute required the Commissioner to make the investigation and to report his findings to the Board but does not direct how he shall vote. Unless there was evidence before the Board sufficient to overcome the reported findings it would appear strange for the Commissioner to vote contrary to his reported findings.

█ It may be that the Commissioner, in advising appellants what his position on the application would be, went further than the statute directed him to go. However appellants were advised of the attitude of the Commissioner and were afforded the opportunity to overcome that attitude by introducing evidence before the Board. The law gave to appellants the right: to have the Commissioner receive their application; to make an investigation of it, and to report his findings to the Board. They do not say the investigation was not "thorough" nor that the report was not honest. After the above steps appellants were entitled to a hearing before the Board and to its decision. All of these steps have been had and in that respect appellants have been afforded due process. Anchor v. Wichita County Water Improvement Dist. No. 2, 123 Tex. 105, 66 S.W.2d 657. Further appellants have not shown that the Commissioner violated any statutory duty resting on him nor that their complaint against him renders the action of the Board invalid.

We are not advised as to whether at the time the Commissioner told appellants that he would be against their application he had made an investigation of the Bracewell application, and we are not advised, except by the Commissioner's own statement quoted supra, why he was opposed

to the application. However it is agreed that two banks in the area are not justified.

■ The Commissioner voted "no" on the issues of volume of business and public necessity. We must, of course, accord to the Commissioner the exercise of an honest discretion in discharging the duties imposed on him by the Legislature; receiving applications, making an investigation, reporting his findings to the Board of which he is made a member, and, impliedly, to vote at the Board meetings. In keeping with this statement and the vote of the Commissioner together with the Bracewell application it appears that he was possessed of information which convinced him that the volume of business and public necessity did not justify the Stella Link application. In view of the duties imposed on the Commissioner by statute we think his action is not shown to be illegal so as to render the action of the Board invalid.

The complained of influence operating on the Attorney General, as shown supra, influenced him to vote for the Southside application.

■ It is clear that point one urges us to investigate the motive or purpose of the Attorney General which prompted his action. This we cannot do. Railroad Commission of Texas v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S.W. 573. State Banking Board of Texas v. McCulloch, Tex.Civ.App., 316 S.W.2d 259, Er. ref., n. r. e.

If the appellants' contention that both the Commissioner and the Attorney General were disqualified to hear their application were sustained then the only tribunal authorized by law to hear the same would be destroyed. On the other hand if only one of the said members were held disqualified then, since their application was rejected by a unanimous vote of the Board on January 8, 1960, it in any event was rejected by a majority vote. This being true appellants then are compelled to rely on the rule that participation by one disqualified member affects and renders null the action of the Board. See: 42 Am.Jur. p. 313, Sec. 23. Thus the contentions urged on us by appellants approach the application of the doctrine of necessity which as stated in 15 R.C.L. and quoted in State ex. rel. Miller v. Aldridge, 212 Ala. 660, 103 So. 835, 837, 39 A.L.R. 1470 is:

> "It is well established that the rule of disqualification of judges must yield to the demands of necessity, as, for example, in cases where, if applied, it would destroy the only tribunal in which relief could be had."

See annotations following State ex rel. Miller v. Aldridge, supra in 39 A.L.R. at page 1476 et seq.

It appears that the courts of Texas have not applied the doctrine of necessity to administrative proceedings. Rather they have left the authority to the agency to enter the order and to then test its legality by established principles. In Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, 1029 the court said:

> "If the matter covered by the order is one committed to the agency by the Legislature, and involves the exercise of its sound judgment and discretion in the administration of the matter so committed to it, the court will not undertake to put itself in the position of the agency, and determine the wisdom or advisability of the particular ruling or order in question, but will sustain the action of the agency so long as its conclusions are reasonably supported by substantial evidence. This is so because, since the Legislature has seen fit to vest the authority to exercise sound judgment and discretion in the particular matter in the administrative agency, courts will not undertake to usurp the powers committed to the agency, and to exercise the agency's judgment and discretion for it. * * * In such a case the issue is not whether or not the agency came

to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound judgment and discretion of the agency in a matter committed to it by the Legislature, the court will sustain the order if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence."

The Legislature has prescribed the procedure to be taken before the Board. It has not provided for disqualifications of Board members and has not authorized initial proceedings to be begun before any officer or tribunal other than the Commissioner and the Board. However the right of appeal from the Board's order and a trial de novo is provided. On appeal only questions of law are presented and the Board must be left free to finally determine controverted issues of fact and if the fact findings are reasonably supported by substantial evidence the order is not illegal, unreasonable, or arbitrary. Gulf Land Company v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73. Railroad Commission v. Mackhank Petroleum Co., 144 Tex. 393, 190 S.W.2d 802.

Under their first point appellants do not say the order is not supported by substantial evidence but do so say under their third point.

By the rule of the Board promulgated May 1, 1947 and quoted supra it is provided that applications "shall be presented in order of filing." There is no provision for the order of decision on applications. Supra we have quoted from the minutes of the Board. These show that the Stella Link application was presented to the Board prior to the presentment of the Southside application and a hearing was had on the applications October 5, 1959. The decision on the applications was deferred. A decision of the Southside application prior to a decision on the Stella Link application did not violate the Board's rules. In State Banking Board of Texas v. McCulloch supra this Court was confronted with a question similar to the question here and we there said:

"The Board was authorized to consider the priority of the filing of the applications but it could not make such priority the controlling factor in arriving at a final decision as between them. Kentucky Broadcasting Corp. v. Federal Communications Commission, 84 U.S.App.D.C. 383, 174 F.2d 38.

"The Board was not only authorized but it was its duty to decide whether both applications should be granted or both rejected or whether one should be granted and the other rejected and, if so, which one." [316 S.W.2d 264.]

Appellants' third point asserts there was not substantial evidence before the trial court to support the Board's finding that the proposed officers and directors of the Southside Bank were qualified to render success of the bank probable. The statute, Art. 342–305 supra breaks these qualifications up into three requirements: banking experience, ability and standing.

A summary of the evidence heard by the trial court supporting the qualification of the proposed directors follows:

Chairman of the board, vice president of an exceptionally large independent wholesale grocery company and also president of another company, with banking experience as a director of a State bank at Channelview, Texas and as a director of a savings and loan association in Houston.

A vice president of an electronic firm with experience in the field of commercial real estate.

The general manager of a dairy company and experienced in the mercantile field.

A vice president of an iron and steel company with experience in the industrial manufacturing field and a director of a savings and loan association.

An experienced certified public accountant specializing in oil and gas transactions.

An attorney with interests in the fields of insurance, radio broadcasting, animal food manufacturing and real estate development including ownership and operation of commercial buildings and apartments.

A medical doctor with experience in the field of securities.

A vice president of a mortgage bankers company with qualifications in the fields of real estate, real estate development and money market and who had served three years in the banking department of the State of Minnesota.

Appellants do not say that the above named parties do not possess the qualifications and experience as stated but say there was not substantial evidence to support the Board's finding that said parties have sufficient banking experience, ability and standing to render success of the bank probable. Thus a question of law is presented: Are the findings of the Board reasonably supported by substantial evidence?

Substantial evidence has been said to be such competent evidence as a reasonable mind might accept as adequate to support a conclusion. Texas Liquor Control Board v. O'Fallon, Tex.Civ.App., 189 S.W.2d 885; Lowe v. Texas Liquor Control Board, Tex. Civ.App., 255 S.W.2d 252.

The above qualifications were proved by competent evidence and show that the group possesses business experience in various fields of business common to the City of Houston. They are shown to be experienced business men with two of them having had banking experience—one as a bank director and one with past services with a State banking department. In addition there is in the group a certified public accountant and executives of savings and loan associations. Applying the above test to the evidence and testing the conclusion by the reasonableness of its support by that evidence it must be said that the findings of the Board on the issues in question are reasonably supported by substantial evidence.

Appellants' points are overruled and the judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

This is another instance in which a top filed application for a banking charter is arbitrarily given preference over a previously filed and equally meritorious application, contrary to established authority and the commonest sense of fairness. When rights are equal, the first in time prevails. Yet, the Banking Board and the courts of this State, as evidenced by the majority opinion herein and this Court's previous majority opinion in State Banking Board of Texas v. McCulloch, 316 S.W.2d 259, 264 writ ref., N.R.E., refuse to follow this principle and the eminent authorities which sustain it.

In McCulloch this Court said: "The Board was authorized to consider the priority of the filing of the applications but it could not make such priority the controlling factor in arriving at a final decision as between them."

This misconceives the rule. Equality of rights is the basis of it. Unless there are "equally meritorious applications," the rule of priority is not invoked. If the applications are of this character then, in the words of Mitchie, the leading authority on banks and banking " * * * there is * * * no discretion; the application first presented should be granted."

In McCulloch there was absolute equality of applications insofar as the statutory requirements for a charter were concerned. The Board so found. This Court in that case referred to and considered matters

extraneous to the statutory requirements. This, in my opinion, is erroneous statutory construction and, as shown by my dissent, is contrary to the pronounced policy statement of the Banking Board that it would not, in considering banking charter applications, go beyond the "factors which are enumerated in the law."

The instant case is an even more flagrant violation of the equitable rule of priority as stated in Mitchie. The majority merely states that "A decision of the Southside application prior to a decision on the Stella Link application did not violate the Board's rules," and then cites and quotes from McCulloch to the effect that priority is not controlling. No extraneous, nonstatutory matters are relied on by the Court to differentiate the one application from the other. The award of the charter for this bank depended solely, completely and absolutely upon the order in which the applications for it were considered.

It is undisputed that the trade area defined for the two proposed banks was sufficient to support only one state bank. Thus, the granting of one of the charters foreclosed any possibility of the granting of the other. With the granting of the Southside application first, the denial of the Stella Link application followed as a matter of course since negative answers to the public necessity and volume of business inquiries were obliged. The order of decision was the sole decisive factor.

The majority says the rule of the Board was not violated. Perhaps not; but when did administrative fairness come to depend upon the existence of a rule requiring it? Must administrative agencies, as well as the courts, require a legislative mandate before they follow a venerable, unchallenged, authoritative rule of law based on common fairness?

On Law Day, lawyers, judges and others are wont to proclaim that we live under a Government of law and not men. If we believe in what we say, then we should practice it.

I respectfully dissent.

On Appellants' Motion for Rehearing

GRAY, Justice.

■ In their motion for rehearing appellants say that the majority committed fundamental error in affirming the judgment of the trial court because: it is apparent from the record that the Southside application, though filed subsequent to appellants' application, was first presented and decided for which reason they were denied due process of law before the Board. They also in effect say that the majority erred in permitting the Board to violate its own rule, and that because their application was first filed it was entitled to be first decided because "Where the equities are equal, the first in time shall prevail."

Our majority opinion quotes' from the minutes of the meetings of the Board and also the pertinent provisions of the applicable rule. These show that appellants' application was *first* presented and was *first* heard at the October, 1959 meeting. A decision on the applications was not had at that meeting for which reason the decision was necessarily deferred. The rule of the Board was in all respects followed at that meeting. The rule provides for first presentment and not for a first decision. The last statement is important here in view of the subsequent showings of the minutes.

The minutes of the November 10 meeting show that the hearing on both applications was postponed on the request of appellants. It must be noticed that the postponements were at the request of appellants and not at the request of the Southside group. Although it is not shown to have been before the Board at the meeting on November 25 [1] the minutes of the De-

---

1. At which time the Southside application was granted which was before December 3, to which time appellants had requested postponements.

cember 3 meeting show that appellants presented matters which in the opinion of the Board required a further postponement of the hearing on their application.

Even if we agree with appellants that their first filing created equities in their favor we do not agree that the Board must stay its decision of a second application so long as appellants elected to secure postponements of the hearing on their own application. This would be an unreasonable hindrance to procedure by the Board. It is the opinion of the majority that any equities originally existing in favor of appellants because of their first filing was lost due to their own acts; that due process was not denied to appellants, and that the action of the Board did not violate its own rule.

The motion for rehearing is overruled.

Motion overruled.

HUGHES, Justice (dissenting).

For the Court to rely so heavily on the first presentation of an application for a bank charter is to prefer form to substance. The spirit of the rule of the Board requiring applications to be presented in the order of their filing certainly embraces decision in the same order; otherwise the semblance of fairness in the rule is utter farce.

Besides, while the Court states that the record shows the Stella Link application to have been first presented, appellees, themselves, do not state the matter so strongly. They say the record reveals "that both applications were presented to the Board at substantially the same time."

The Court now suggests that appellants have in some manner lost their priority by requesting that Board action on both applications be postponed for one month.

The ground for requesting such delay is not shown. Nor is it shown that appellees objected to such request.

That waiver could be thus accomplished is beyond my capacity to comprehend.

In fairness to appellees, it should be stated that they do not advance this reason for sustaining the action of the Board.

I respectfully dissent.

