**J. M. FALKNER, Banking Commissioner, et al., Appellants,**

v.

**GIBRALTAR SAVINGS & LOAN ASSOCIATION, Appellee.**

No. 10992.

Court of Civil Appeals of Texas.

Austin.

July 11, 1962.

Rehearing Denied July 25, 1962.

Will Wilson, Atty. Gen., Bob E. Shannon, Coleman Gay, III, Asst. Attys. Gen., Austin, Fulbright, Crooker, Freeman, Bates & Jaworski, Gibson Gayle, Jr., Houston, Clark, Thomas, Harris, Denius & Winters, James H. Keahey, Austin, for appellants.

Monteith, Baring & Monteith, Houston, Graves, Dougherty, Gee & Hearon, Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment of the District Court holding that an order of the

Banking Commissioner dated July 29, 1958 denying the application of Gibraltar Savings and Loan Association, appellee, to maintain a branch office at a specified location in Houston was not reasonably supported by substantial evidence and is illegal and setting such order aside.

On February 12, 1958 appellee made application to the Banking Commissioner "to open an additional office in the proposed Smith-Hofheinz Shopping City, located in the vicinity of Westheimer and Sage Roads, Houston, Texas." Hearing was held on such application before the Banking Commissioner in Austin, Texas, on June 12, 1958. On July 29, 1958 the Banking Commissioner entered his order denying the application.

Appellee then brought this action, alleging that such denial was "arbitrary, discriminatory and capricious." Appellant San Jacinto Savings & Loan Association, having been a protestant at the hearing upon the application, intervened in support of the Banking Commissioner's denial. The Attorney General moved for summary judgment on the basis that:

"(3) That at the time Defendant Falkner declined Plaintiff's application for said branch, the said Smith-Hofheinz Shopping City had not been built, and that the application for said branch was declined specifically for that reason.

"(4) That, as a matter of law, the fact that a branch is applied for in an undeveloped shopping center is sufficient ground for declining such application on the ground that establishment of such branch in an undeveloped shopping center would not promote the public convenience and advantage, as required by Article 881a–2, V.A.C.S."

Such Motion for Summary Judgment was denied and the parties went to trial on December 4, 1961, on the plaintiff's third amended original petition and trial amendment thereto. On January 15, 1962, the Trial Court entered its judgment, holding "that the said order of defendant Banking Commissioner and his acts in connection therewith did not deny plaintiff due process of law" but that "the order of defendant Banking Commissioner dated July 29, 1958 denying plaintiff's application to maintain a branch office of its association is not reasonably supported by substantial evidence and is invalid, illegal, void and of no binding effect and is hereby set aside."

The appeal is based on two points of error as follows:

"Point One. The Trial Court erred in overruling the Attorney General's motion for summary judgment.

"Point Two. The Trial Court erred in holding that the Banking Commissioner's denial is not reasonably supported by substantial evidence."

The prime issue in this case, conceding procedural sufficiency, is whether the action of the Commissioner in denying the application was supported by substantial evidence.

The applicant, appellee herein, had the burden of proving, under the provisions of Art. 881a–2, and other related sections as are set out, before or to the Commissioner the sufficiency of the facilities to serve the public convenience and advantage in the neighborhood proposed to be served, and that the volume of business there is such as to indicate a profitable operation; that the proposed operation will not unduly injure any other association operating in the area; that the proposed location is within the same county as the home office of the applying association and that there is no other association adequately serving the neighborhood.

The character of the application, its required contents and recitations, are fully set out in the statute, and in a number of cases such as Falkner v. Gibraltar Savings Association, Tex.Civ.App., 348 S.W.2d

467, error ref., N.R.E., and we do not restate the several requirements.

The appellee applied for a branch location as we have hereinabove set out in 1958 in a shopping center which had not then been constructed and which has not been built or started now, some four years later.

The Trial Court, in the judgment, found:

"It is further ORDERED, ADJUDGED and DECREED that Acts 1929, 41st Legislature, 2d. Called Session, page 100 as codified by Vernon's as Article 881a–2, V.A.T.S. and Article 1136a–9, V.A.P.C. is constitutional; and that the said order of defendant Banking Commissioner and his acts in connection therewith did not deny plaintiff due process of law.

"It is further ORDERED, ADJUDGED and DECREED that the order of defendant Banking Commissioner dated July 29, 1958, denying plaintiff's application to maintain a branch office of its association is not reasonably supported by substantial evidence and is invalid, illegal, void and of no binding effect and is hereby set aside.

"It is further ORDERED, ADJUDGED and DECREED that defendants are enjoined from enforcing said order and from issuing any orders or taking any further action that will interfere with the opening of plaintiff's said office and that defendant R. A. Benson, as Savings & Loan Commissioner of Texas and successor in administrative control to defendant J. M. Falkner, is directed to enter a proper order in the premises; * * *"

We shall attempt to review the record, although the statement of facts contains 871 pages with many exhibits, in as brief a manner as we can consistent with a full consideration in an effort to determine if the order of the Commissioner denying the application to maintain a branch office of its

association is reasonably supported by substantial evidence, bearing in mind that it was the conditions existing at the time the application was made that are controlling.

The application dated February 12, 1958 reads in part:

"We hereby make application to open an additional office in the proposed Smith-Hofheinz Shopping City, located in the vicinity of Westheimer and Sage Roads, Houston, Texas."

From the statements in the application and in the accompanying verifications as to place of location and area to be served it is to us apparent that the branch was to be situated in the Smith-Hofheinz Shopping City, located in the vicinity of Westheimer and Sage Roads. The Shopping City was not then under construction and according to statements in appellants' brief, building is not now going on.

The Commissioner found that there was not a sufficient volume of business to render the operation profitable and that there was another association in the area which would be injured by the operation of the proposed branch.

The denial of the application is as follows:

"*EXHIBIT B–1* DEPARTMENT OF BANKING

"Austin 14, Texas
"July 29, 1958

"J. M. FALKNER
"COMMISSIONER

"Gibraltar Savings and Loan Association
"Houston, Texas

"RE: Application for branch office—Smith-Hofheinz Shopping Area, Houston Texas

"Dear Sirs:

"Your application to establish a branch in the Smith-Hofheinz Shop-

ping Area is declined for the following reason:

"The application is for a branch in an undeveloped shopping center, which would indicate that the volume of business that could be developed would be insufficient to render the operation profitable and, further, there appears to be facilities available to the public within a distance of approximately two (2) miles. We regret that the application does not in our opinion merit favorable action.

"Yours very truly,

"s/ J. M. Falkner
"Commissioner."

Some days later in reply to a letter from an attorney for Gibraltar concerning some misunderstanding, the Commissioner wrote the following letter:

"*EXHIBIT E*—DEPARTMENT OF BANKING

"Austin 14, Texas
"August 1, 1958

"J. M. FALKNER
"COMMISSIONER

"Mr. Edgar W. Monteith,
    Attorney at Law
"Monteith, Baring and Monteith
"Gibraltar Building
"Houston 2, Texas

"Dear Mr. Monteith:

"This will acknowledge receipt of our letter of July 31 with reference to our action in declining the application of the Gibraltar Savings and Loan Association, Houston, Texas, to establish a branch office in the Smith-Hofheinz Shopping Area.

"Apparently, there was some misunderstanding as to this application. I had reference to the trial of the case in the District Court here in Austin. As a matter of fact our attorneys suggested to me that action be taken on pending applications to establish branches when the final outcome of the trial in the local District Court became known. Our action in declining this application does not in our opinion preclude the Gibraltar from filing an application to establish a branch at some later date. We regret this misunderstanding, but we see no way of undoing what has already been done.

"Yours very truly,

"s/ J. M. Falkner
"Commissioner."

█ We believe that there was substantial evidence to support the action of the Commissioner in denying the application.

V. P. Ringer, a real estate broker, appraiser and a member of the Planning and Zoning Commission of Houston, testified as to the trade area, showing the land used in such area as residential, commercial, industrial and public properties. The shopping centers as of July, 1958, were given and the size of each, one of which was Highland Village adjacent to which is located the San Jacinto Savings & Loan Association's Highland Village Branch and which is within a two mile radius of the proposed branch. The witness testified in part as follows:

"Q Then from your testimony, Mr. Ringer, would you state whether or not it would be your conclusion that the trade area, as an eight mile circle there, would tend to attract some of the same customers that at the present time come to the Highland Village Shopping Center; would that be correct?

"A Well, it certainly would get some percentage of those customers, yes, sir.

\* \* \* \* \* \*

"Q Do you feel that the Smith-Hofheinz Shopping Center would kill the River Oaks Shopping Center, Mr. Ringer?

"A You mean had the Smith-Hofheinz Shopping City been constructed?

"Q Yes, sir, as proposed, in the times that we have been talking about.

"A I think it would have been a tremendous competitive problem to everything within that eight mile radius."

Various population density maps were introduced showing the trade area but we do not embody such herein.

Further Mr. Ringer testified:

"Q As of July, 1958, was the Smith-Hofheinz Shopping Center completed?

"A No, sir.

"Q As of July, 1958, had construction begun on the Smith-Hofheinz Shopping Center.

"A No, sir.

"Q As of July, 1958, what was out there on the site of the proposed Smith-Hofheinz Shopping Center; were there any buildings?

"A No, sir, no buildings.

"Q Was it just vacant land?

"A Vacant land.

\* \* \* \* \* \*

"Q Assuming that there were not comparable facilities west on Westheimer, west of Highland Village, your statement is that people would come on in to the Highland Village Shopping Center, is that correct?

"A Yes, sir."

The witness testified that the railroad did not constitute a barrier to vehicular traffic coming east on San Felipe, Westheimer and Richmond Streets, or a barrier to the development of land or the progress thereof from east of the tracts to west of the tracts, and that the presence of the T. & N. O. Railroad tracts at the crossing of Westheimer going into the Highland Village Shopping Center did constitute or would be a barrier to shoppers coming from the west of the tract to the Highland Village. In the statement of facts more than 100 pages of questions and answers of Mr. Ringer is taken up and we cannot recite or state such in more detail, but the Commissioner heard the witnesses and examined the submitted exhibits.

Stanley Silvus, Vice President of San Jacinto Savings & Loan Association, testified as to his training and experience and employment by various loan organizations, whose testimony is reflected on more than 130 pages of the statement of facts and we shall endeavor to recite only such as appears to be necessary in this case. The witness testified that in July, 1958 San Jacinto had two offices, one at 2917 Luell Street, the other at 3733 Westheimer which opened in Highland Village in March, 1957, and detailed accounts coming from other institutions; that on June 30, 1958 the branch had total accounts of $700,000.00 and that the operation at that time was not profitable. Mr. Silvus testified further that the opening of the appellee's branch at the Smith-Hofheinz Shopping Center would have a detrimental effect on San Jacinto's operation and testified more specifically that:

"Q Mr. Silvus, as of June or July of 1958, in your opinion would the location of another savings and loan association in the trade area delineated on Defendants' Exhibit No. 6 have been detrimental to your savings and loan association already there?

"A We think so.

"Q How would it? Would you develop that answer?

"A Well, we think that any other operation in that area would have divided the potential savings and naturally that would have hurt us. We located on Westheimer Street because it is a through thoroughfare, coming from the extreme part of Western

Houston into the City of Houston. It carries tremendous traffic—it always has, and we feel that any association office a westerly direction from our officer location would have tended to attract savings accounts from us.

"Q Based upon your knowledge of the savings and loan business and the knowledge of facilities that you offer to the public, do you have an opinion of whether or not that facility was sufficient to take care of the savers who desired to make savings and loan association accounts and to ask for loans in this area as of 1958?

\*　\*　\*　\*　\*　\*

"A We felt that our Westheimer office was adequate to serve the area and was serving the area.

"Q Prior to June, 1958, did you have knowledge of the proposed Smith-Hofheinz Shopping Center?

"A Yes, we did.

"Q Will you state briefly the location of the proposed center?

"A It was west of our office on the —the tract actually faced on Westheimer, and it was in a due westerly direction from our location.

"Q As of June or July, 1958, was construction actually begun on the Smith-Hofheinz Shopping Center?

"A No, sir.

"Q How about as of September, 1958?

"A No, sir.

"Q Would you state whether or not there was any construction of any character whatsoever on the 110 acres as of June or July, 1958?

"A No, sir.

\*　\*　\*　\*　\*　\*

"Q Why did San Jacinto Savings and Loan wish to protest the application for this Smith-Hofheinz Branch?

"A We felt that it would be detrimental to the operation of our Westheimer office, being so closely related to the area in which we served.

"Q What was your protest?

\*　\*　\*　\*　\*　\*

"A We protested on the basis that I just mentioned—that Westheimer is a very heavily traveled traffic artery. That their operation of a branch office in the Smith-Hofheinz Center, being in a westerly direction from our office, would definitely tend to take savings accounts from our operations, and that we did not feel that another savings office in that general area would be sufficient for an extended time to justify the operation of the proposed office."

Appellee herein offered evidence by Walter Phillips, its President, who testified concerning the making of the application and that he was familiar with its contents and statements and that all were true; that he was acquainted with the general area and average income of the residents, population, the area to be served, and the freeway and street system. The testimony of this witness is contained in more than 60 pages.

There was much additional testimony by witnesses: Dr. John P. Owen, Chief of Bureau of Business and Economic Research at the University of Houston; Thomas A. Willier, a professional traffic consultant in New York and Houston, and a number of others whose qualifications are not in doubt. The testimony of these several witnesses were as to the growth of Houston, building permits and value thereof, income, loans, etc.

We do not review the evidence of the witnesses for the appellee, except to state that such evidence was in conflict generally with that of the appellants, but we cannot choose between conflicting expert opinions and evidence, to do so would be to usurp the functions of the Commissioner, and

since there was substantial evidence to support the action of the Commissioner, we believe that the Trial Court erred in setting aside the order of the Banking Commissioner. Gibraltar Savings Association v. Falkner, Tex., 351 S.W.2d 534; Farb v. State Banking Board, Tex.Civ.App., 343 S.W.2d 508, no writ history; Railroad Commission of Texas v. Gardner, Tex.Civ. App., 338 S.W.2d 753, error ref., N.R.E.

The judgment of the Trial Court is reversed and judgment rendered that appellee take nothing.

Reversed and rendered.

RICHARDS, J., not sitting.