**Evan J. HENRY, Relator,**

v.

**MINNESOTA PUBLIC UTILITIES COMMISSION, Respondent.**

**No. C9–84–1950.**

Court of Appeals of Minnesota.

October 29, 1985.

Review Granted Dec. 19, 1985.

228

Evan J. Henry, pro se.

Hubert H. Humphrey, III, Atty. Gen., Allen E. Giles, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Joseph A. Maun, James A. Gallagher, St. Paul, for Northwestern Bell Telephone Co.

Considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ., without oral argument.

## OPINION

POPOVICH, Chief Judge.

Evan Henry appeals by certiorari from Minnesota Public Utilities Commission (MPUC) orders dated July 27, 1984 and September 26, 1984. He contends (1) the MPUC should have dismissed Northwestern Bell's (NWB) petition for a general rate increase, (2) the MPUC's findings and conclusions were not supported by the evidence, and (3) the members of the MPUC do not have the necessary professional expertise. We reverse.

## FACTS

In September 1983, NWB petitioned for authority to increase its schedule of rates for intrastate service by $109,461,000 annually. The MPUC suspended the rates and directed that a contested case hearing be held. Evan Henry participated as one of the intervenors. Hearings were held in January, March, April, the last hearing on April 5, 1984.

On January 30, February 18 and March 30, 1984, NWB filed documents with the Federal Communications Commission regarding plans for a corporate reorganiza-

tion of NWB and affiliated corporations. Reorganization plans included placing a holding company between NWB and its parent company, U.S. West. NWB did not advise the MPUC that it was reorganizing until April 26. The actual reorganization followed in several days. The MPUC responded on May 4 by directing the Minnesota Department of Public Services (DPS) to investigate the proposed corporate restructuring including the financial impact of the reorganization.

The administrative law judge took administrative notice of the MPUC's May 4 order and NWB's filings with the MPUC which prompted the order initiating the investigation. He then held a post-hearing conference on his own motion. Intervenors, including the Department of Public Service and Evan Henry, moved to dismiss the rate case.

On May 17, 1984, 13 days before the record closed and after all scheduled hearings had been held, DPS and NWB entered a stipulation. NWB agreed (1) the financial impact of the reorganization should be considered as part of the rate proceeding, (2) to provide the requested information with due diligence, and (3) not to contest the recommended substantive adjustments. The DPS subsequently withdrew its motion for dismissal.

In a complete and well-reasoned recommendation to the MPUC dated May 22, 1984, the administrative law judge found that the financial impact of the corporate reorganization was not addressed in the proceeding's evidentiary record and it was necessary to consider the impact prior to rendering a decision regarding NWB's general rate increase. He concluded (1) by failing to disclose the reorganization during the scheduled hearings NWB precluded any consideration of the reorganization on the record, (2) there was a probability that the effects of the corporate reorganization would have more than a de minimis impact upon any revenue deficiency, (3) there was insufficient time to reopen the hearings, assess the input, and still allow the MPUC time to issue its final order within the

statutory period allowed for decision, (4) there is no legal way to enlarge the statutory time period, (5) he could not issue a full report based upon a record which has been affected to an undetermined extent, and (6) in the absence of a record of the financial effects of the reorganization, NWB failed to sustain its burden of proof with respect to the reasonableness of its proposed rate increase. The administrative law judge recommended that the rate request be dismissed for failure of NWB to sustain its statutory burden of proof under Minn.Stat. § 237.075, subd. 4 (1984).

In his memorandum, the administrative law judge gave his reasons for determining the corporate reorganization has a "potentially substantial impact on the continued integrity of his record." He first cited the MPUC's decision to investigate the reorganization and the reason given by the MPUC for its decision:

> Clearly, the formation of another layer of holding company which will own stock of the regulated telephone company and the transfer of assets from the regulated telephone company may have considerable effect upon basic local telephone service. Several effects, including the potential for cross-subsidy of basic local telephone rates, have been recognized by the FCC as well as state commissions.

He also cited (1) the questions regarding financial impact which the MPUC asked the DPS to address in its investigation, (2) the company's admission that the financial impact of reorganization had not been addressed as part of the evidentiary record, and (3) it should be considered by the MPUC as part of the rate proceeding. Finally, he enumerated a long list of services to be provided to NWB by the holding company, including executive administration, public relations, institutional advertising, corporate plan development and implementation, auditing, and financial planning. He noted, if such services are provided in the near term, he could not determine from the record the impact on the rate proceeding or how provision of such services might alter record testimony regarding other services provided to NWB from the U.S.

group or services NWB now provides for itself. He concluded:

> The unanswered questions posed by the reorganization, the nature of the questions involved in the pending investigation, those facts of which the Administrative Law Judge does have knowledge, and the duration and likely complexity of the investigation leads to one conclusion: the reorganization does have sufficient potential to affect any revised rates so that the Administrative Law Judge cannot, within the dictates of law, rely upon the existing record in recommending to the Commission any specific revenue deficiency.

On June 8, 1984, the MPUC wrote to the administrative law judge stating its belief that due process would best be served by addressing the restructuring issue within the context of this rate proceeding. It said it intended, upon rendering a decision on the record of this proceeding, to move on its own motion for rehearing on all the additional issues posed by the restructuring. It also indicated DPS would have its results of the MPUC ordered investigation and the results would be used as a basis for additional hearings. The MPUC requested that the administrative law judge issue his report on the basis of the existing record. Under protest, the administrative law judge issued his report without giving consideration to the corporate restructuring.

The MPUC issued its findings of fact, conclusions of law and order on July 27, 1984. It considered the administrative law judge's recommendation for dismissal as a possible final disposition to the contested case proceeding, denied the motions for dismissal reiterating its intention to "establish any necessary procedures to address issues arising from the Company's reorganization," and ordered that NWB was entitled to increases in gross annual revenues of $57,511,000. In denying the motion to dismiss, the MPUC reasoned that dismissal of the case would result in costs estimated to be $2–3 million dollars, which if deter-

mined to be appropriate would be allowable expenses in NWB's next rate case and thus ultimately borne by the consumer. It further reasoned there were many issues which may be unaffected by the restructuring. Therefore, it concluded "efficiency and economy demand that those issues and the record developed regarding them be preserved."

Pursuant to MPUC's July 27 order, all parties were served with DPS's investigative report that it was its preliminary determination the rate increase should be reduced by $371,000 to reflect the financial impact of the reorganization. The parties were directed to submit comments no later than August 14. No comments were submitted. On August 24, 1984, DPS issued a revised adjusted figure of $363,000.

On August 23, the MPUC met to consider rehearing procedures and on August 27 ordered a rehearing and reopening of the record. On September 12, the MPUC held a rehearing to receive the DPS report and to determine whether there was reason to have a contested case regarding the financial impact of restructuring. In its September 26 order, after reconsideration and rehearing, it found that none of the parties disputed the accuracy of the $363,000 downward adjustment or requested further hearings. It concluded the previously authorized rate increase should be reduced by $363,000 and that further hearings were not required. The MPUC denied Henry's renewed motion to dismiss because of procedural inadequacies.

### ISSUES

1. Was the MPUC's decision to deny the motion to dismiss and to establish a rehearing process affected by an error of law resulting in a final decision made upon unlawful procedure?

2. Can relator challenge the composition of the MPUC?

### ANALYSIS

■ 1. Judicial review of administrative agency decisions is governed by the Administrative Procedures Act, Minn.Stat. §§ 14.-63–.69 (1984). This court can reverse the agency's decision if it is made upon unlawful procedure or affected by other error of law. Minn.Stat. § 14.69 (1984).

■ Minn.Stat. § 237.075, subd. 2 governs hearings in telephone rate cases and provides in part:

Whenever there is filed with the commission as provided in subdivision 1 a schedule modifying or resulting in a change in any rate then in force, the commission may suspend the operation of the schedule * * *. The suspension shall not be for a longer period than *ten months* beyond the initial filing date. During the suspension the commission shall determine whether all questions of the reasonableness of the rates * * * can be resolved to the satisfaction of the commission. If the commission finds that all significant issues raised have not been resolved to its satisfaction * * * it shall refer the matter to the office of administrative hearings with instructions for a public hearing as a contested case pursuant to chapter 14 * * *.

\* \* \* \* \* \*

If the commission does not make a final determination concerning a schedule of rates within *ten months* after the initial filing date, the schedule shall be deemed to have been approved by the commission. For the purposes of this section, "final determination" means the initial decision of the commission and not any order which may be entered by the commission in response to a petition for rehearing or other further relief. The commission may further suspend rates until it determines all those petitions.

Minn.Stat. § 237.075, subd. 2 (emphasis added). The telephone company seeking a rate change has the burden of proof to show that the rate change is just and reasonable. Minn.Stat. § 237.075, subd. 4. If, after the hearing, the MPUC finds that rates are unjust and unreasonable, it shall then determine the rates to be charged for the service in question. Minn.Stat. § 237.-075, subd. 5.

■ NWB filed its petition for authority to increase its schedule of rates on September 29, 1983. The ten month statutory time period in which the MPUC could issue its final determination in the matter expired on July 30, 1984.

On July 27, the MPUC issued its order entitling NWB to an increase in gross annual revenues of $57,511,000. Its determination was based upon a record which closed on May 30 and included the stipulated agreement between NWB and DPS as well as the administrative law judge's administrative notice of the MPUC's May 4 order initiating the investigation and NWB's filings with the MPUC which prompted the order.

The MPUC neither accepted nor rejected the administrative law judge's findings and conclusions which led to his recommendation to dismiss the rate proceeding because of NWB's failure to sustain its burden of proof with respect to the reasonableness of its proposed rates. It should have made some determination.

> Every decision and order rendered by an agency in a contested case * * * shall be based on the record and shall include the agency's findings of fact and conclusions on all material issues.

Minn.Stat. § 14.62, subd. 1. At the time of the order, the issue of the reorganization's financial impact was not immaterial. If MPUC had rejected the findings and conclusions of the administrative law judge and given reasons, we could determine whether substantial evidence supported the decision to reject. However, it is apparent the MPUC agreed with the administrative law judge that the reorganization did have sufficient potential to affect any revised rates because it stated its determination to rehear the matter using the results of the DPS investigation as a basis for rehearing. That investigation, including an investigation of a financial impact of the reorganization, was premised in part upon MPUC's earlier determination that the formation of another layer of holding company might have considerable effect upon basic telephone service and one of the effects is a cross subsidy of basic local telephone rates. By stating its intention in advance to rehear the matter, the MPUC was acknowledging that the record was substantially incomplete and could not, at the time of the order, support a final determination. Indeed, in its brief the MPUC asserts that it was "essential" to consider the effects of the corporate restructuring in the context of the rate case proceeding. Since a final determination could not be made before July 30 based upon the record in the proceeding, the MPUC sought to remedy the situation by scheduling a rehearing in advance. This remedy was merely an attempt to circumvent the ten month statutory limitation and must fail as a sham. NWB, which ordinarily has the most to gain by the ten month statutory limitation, did not protest because MPUC's only other alternative was to dismiss. MPUC should have done so.

■ 2. Other provisions in Minn.Stat. § 237.075 further support our determination. Subdivision 2 specifically directs that "[d]uring the suspension the commission shall determine whether all questions of the reasonableness of the rates * * * can be resolved to [its] satisfaction * * *." In this case, it is clear that all questions of reasonableness were not resolved to its satisfaction during the ten months. Further, subdivision 2 directs the MPUC to refer any unresolved significant issues to the Office of Administrative Hearings for a contested case. The unresolved matter of the financial impact of reorganization should have been considered in a contested case setting.

3. The MPUC contends the statutory provision for rehearing allows it to use the procedure adopted. If we were to accept the MPUC's position we would be rendering the ten-month limitation meaningless. The MPUC order both ignores the role of a rehearing in an administrative procedure and the requirement that a rehearing be conducted in the same manner as the original hearing, that is, a contested case hearing.

In *Anchor Casualty Company v. Bongard's Co-operative Creamery Association*, 253 Minn. 101, 106–07, 91 N.W.2d 122, 126 (1958) the supreme court defined the purpose of a rehearing in an administrative proceeding.

Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it. We think the better view on this question is set forth in *Handlon v. Town of Belleville*, 4 N.J. 99, 106, 71 A.2d 624, 627, 16 A.L.R.2d 1118, which stated:

" * * * Barring statutory regulation, the power may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law. But there must be reasonable diligence. The denial to such tribunals of the authority to correct error and injustice and to revise its judgments for good and sufficient cause would run counter to the public interest. The function cannot be denied except by legislative fiat; and there is none such here. The power of correction and revision, the better to serve the statutory policy, is of the very nature of such governmental agencies. It involves the exercise of a sound discretion, controlled by the statutory considerations and the dictates of justice; the action taken must rest on reasonable grounds and be in no sense arbitrary."

*Id.*

In this case, there is no allegation of error, fraud, mistake or misconception of the facts. The MPUC knew when it entered its July 27 order that the record was unreliable and incomplete because it did not yet know what the financial impact of the reorganization would be. The law clearly sets a ten-month limitation. A rehearing made solely for the purpose of extending the limitation does not serve the law.

The interests of justice would not be served by a rehearing under these factual circumstances. NWB chose not to disclose its plans to reorganize until after the hearing and the rate proceeding had been held, even though it was making plans to reorganize while the hearings were proceeding. It admits the financial impact of reorganization should be considered as part of the rate proceeding. The administrative law judge, in his recommendation of August 24, offered a good summation of the situation:

Northwestern Bell withheld the disclosure of the information until a time when the maximum pressure would be exerted upon the rate-making system to depart from neutral principles that have applied equally to all parties to this proceeding. Certainly that knowing choice does not alter the legal responsibility of the Administrative Law Judge.

The knowing choice also did not alter the legal responsibility of the MPUC.

 The MPUC further relies on Minn.Rule 7830.4100 for its authority to hold a rehearing. This rule provides that any party may petition for a rehearing. "[T]he grounds relied upon shall be specifically set forth and the claimed errors clearly stated." *Id.* Minn.Rule 1400.8300 provides that "[t]he rehearing shall be conducted in the same manner prescribed for a hearing." In this case, the hearing was held as a contested case proceeding, the rehearing was not. At the rehearing conducted by the MPUC, the results of the investigation were accepted as substantive evidence and acted upon contrary to the requirement that only evidence made part of the record may be considered in the determination of a case. *See* Minn.Stat. § 14.60, subd. 2. Finally, even though none of the parties contested the evidence, the MPUC received it without question contrary to the spirit, if not the letter, of Minn.Stat. § 237.075, subd. 1(a):

If the formal parties to the contested case choose not to cross-examine the testimony presented, it shall be the duty of the commission and its staff to make inquiry of the witnesses presented to en-

sure that the testimony is well reasoned and constitutes substantial evidence.

*Id.*

4. Henry also claims the commissioners who decided this case lacked qualifications required by Minn.Stat. § 216A.03 (1984). Commissioners are appointed by the governor with the advice and consent of the senate. *Id.* This is not the appropriate forum to challenge the commissioners' qualifications.

### DECISION

The MPUC erred by circumventing the ten-month limitation set forth in Minn.Stat. § 237.075, subd 2, by scheduling a rehearing after the "final determination." A rate case is an inappropriate forum to challenge the commissioners' qualifications.

Reversed.