Evan J. HENRY, Respondent,

v.

**MINNESOTA PUBLIC UTILITIES COMMISSION,**
**Petitioner-Appellant.**

No. C9–84–1950.

Supreme Court of Minnesota.

Aug. 8, 1986.

Rehearing Denied Sept. 11, 1986.

---

Hubert H. Humphrey, III, Atty. Gen., Allen E. Giles, Karl W. Sonneman, Sp. Asst. Attys. Gen., St. Paul, Robert J. Sheran, Gary J. Haugen, Minneapolis, for Minnesota Public Utilities Com'n.

Stephen T. Refsell, Gen. Atty., Minneapolis, Joseph A. Maun, James A. Gallagher, St. Paul, for Telephone Co.

Evan J. Henry, Winona, pro se.

Richard Johnson, Michael J. Ahern, Minneapolis, amicus curiae.

WAHL, Justice.

Northwestern Bell Telephone Company and the Minnesota Public Utilities Commission (MPUC) appeal a decision of the court of appeals reversing an order of the MPUC granting Northwestern Bell a $57 million dollar annual rate increase. The MPUC convened a rehearing and took additional evidence in a rate case brought by Northwestern Bell after the 10-month period for completion of such a case under Minn.Stat. § 237.075, subd. 2 (1984) had elapsed. Evan Henry, an intervenor, appealed the MPUC's final order and adjusted final order in the case, alleging, among other claims, that these orders were based on improper procedure. The court of appeals reversed, holding the MPUC had circumvented the 10-month statutory period and that the rehearing was required to be convened as a contested case proceeding. We reverse the decision of the court of appeals on these issues and otherwise affirm. We reinstate the final order and adjusted final order of the MPUC.

The factual background of this case is complex. Northwestern Bell filed a petition with the MPUC on September 29, 1983 seeking a $109 million dollar annual rate increase and a modification of its rate structure. The MPUC suspended the proposed rate schedule and initiated a contested case proceeding. A lengthy series of hearings on the petition were held before an ALJ at locations throughout the state in January-April 1984.

While these hearings were in progress, Northwestern Bell was planning an extensive corporate reorganization. In January 1984, the company fiied a corporate restructuring plan with the Federal Communications Commission. Copies of these filings were presented to the MPUC on April 26, 1984, at which time Northwestern Bell notified the commission that, as of April 30, 1984, it would incorporate a new holding company. The holding company would have as its wholly-owned subsidiary a telephone services operating company, Northwestern Bell Telephone Company, who became the petitioner in the pending rate case.

The timing of the company's notice of restructuring limited the ability of the ALJ and the MPUC to respond to the new information within the context of the pending rate case. Hearings on the petition had already been completed and the MPUC was required to issue its final determination by July 30, 1984 to meet the time limit imposed by Minn.Stat. § 237.075, subd. 2 (1984). Subdivision 2 establishes a 10-month period during which a utility's proposed rates may be suspended following a petition for rate change. If the MPUC does not make a final determination concerning a schedule of rates within 10 months after the petition is filed, the rate schedule proposed by the utility is deemed approved. *Id.*

The ALJ called a post-hearing conference of all parties on May 14, 1984 to determine if the present record in the case adequately reflected the financial effect of the corporate reorganization. Following the conference, motions to dismiss Northwestern Bell's petition were filed with the ALJ by several intervenor parties, including Evan Henry, the respondent before this court, and the Department of Public Service

(DPS). The MPUC, for its part, responded to the notice of reorganization by ordering the DPS to investigate the financial effect of the corporate restructuring on the pending rate petition.[1] Subsequently, Northwestern Bell entered into a stipulation with the DPS, agreeing that the effect of the reorganization should be considered in the evidentiary record of the rate proceeding and agreeing not to contest the DPS' recommendations to the MPUC as to the amount of any rate adjustment needed to account for the financial effect of the corporate reorganization. The DPS thereafter withdrew its motion to dismiss.

Before the DPS investigation was concluded and its report submitted, however, the ALJ recommended to the MPUC that the rate petition be dismissed. In the considered opinion of the ALJ, the financial effect of the corporate reorganization was likely to be substantial and had to be considered before any decision on the rate petition could be made. The ALJ stated he did not have sufficient time to hold hearings on the reorganization before the 10–month statutory period expired. He concluded that Northwestern Bell, by failing to introduce sufficient evidence into the present record on which a final determination could be reached, had not met its statutory burden of proof and he recommended the rate petition be dismissed on this ground.

The MPUC, on receiving this recommendation, informed the ALJ that it had decided to address the restructuring issue within the context of the pending proceeding. The commission stated it would render a decision on the present record within the 10–month period and then, on its own motion, reopen the proceeding for hearings on the restructuring issue. The ALJ was asked to submit recommendations on the substantive issues in the rate case, excluding consideration of the effect of the corporate restructuring. The ALJ thereafter

submitted a second report, recommending that Northwestern Bell be awarded $57,511,000 in increased annual revenues and that a new rate structure be imposed. Based on these recommendations, the MPUC issued a final determination in the rate case on July 27, 1984, authorizing the recommended rate increase and adopting the recommended rate structure. The July 27, 1984 final order was issued within the required 10–month period.

The DPS submitted its report to the MPUC on the financial effect of the corporate restructuring on August 1, 1984, recommending a downward adjustment of $371,000 to the rate increase previously ordered. Shortly thereafter, this figure was revised to $363,000. The MPUC, on its own motion, ordered a rehearing and a reopening of the record for the purpose of receiving into evidence the DPS report and to determine if a further evidentiary hearing and separate contested case proceeding regarding the financial effect of the corporate restructuring were required. At the rehearing, no party objected to the amount of the DPS' proposed adjustment. Evan Henry objected to the rehearing procedure, alleging the MPUC did not have authority to reopen the proceeding after it had issued a final determination. He renewed his motion to dismiss the petition and the MPUC denied the motion. An adjusted final order incorporating the downward adjustment was issued by the MPUC on September 26, 1984, almost 12 months after the rate petition had been filed. This appeal followed and Henry prevailed before the court of appeals.

The MPUC and Northwestern Bell raise four issues before this court:

1. Did the MPUC act within its statutory authority under Minn.Stat. § 237.075, subd. 2 (1984) in ordering a rehearing after reaching a final determination?

---

1. Minn.Stat. § 237.081, subd. 1 (1984) provides the MPUC may, on its own motion, summarily investigate any matter relating to any service it believes "for any reason" should be examined. If, after making such summary investigation, the MPUC is satisfied there are sufficient grounds to warrant a formal hearing on the matters investigated, it may initiate such a hearing. Minn.Stat. § 237.081, subd. 2 (1984).

2. Was the MPUC required by either Minn.Stat. § 237.075, subd. 2 (1984) or Minn.Rules pt. 1400.8300 (1985) to consider the issue of Northwestern Bell's corporate reorganization in a contested case procedure and did the summary procedure adopted for the rehearing in this case violate Henry's constitutional right to due process?

3. Did the composition of the MPUC who heard this case satisfy the requirements of Minn.Stat. § 216A.03 (1984)?

4. Did Northwestern Bell meet its burden of proof under Minn.Stat. § 237.075, subd. 4 (1984) as to the rate increase awarded?

## I.

■ The MPUC and Northwestern Bell seek reinstatement of the July 27, 1984 final order and the September 26, 1984 adjusted final order of the MPUC. The court of appeals reversed the orders as based on improper procedure in that the MPUC did not have statutory authority to order a rehearing after reaching a final determination in a rate case. An agency determination based upon unlawful procedure or affected by an error of law will be overturned if the substantial rights of the person challenging that determination have been thereby prejudiced. Minn.Stat. § 14.-69 (1984).

Minn.Stat. § 237.075, subd. 2 (1984) provides that after a petition for a rate change has been filed, the MPUC may, while considering the petition, suspend the proposed rates, but not for a longer period than 10 months. If the commission does not make a final determination concerning a schedule of rates within 10 months after the initial filing date, the utility's proposed schedule is "deemed to have been approved." *Id.* Subdivision 2 further provides, however, that the MPUC may convene a rehearing and that this rehearing will, in effect, toll the 10-month time limit:

> For the purposes of this section, 'final determination' means the initial decision of the commission and not any order which may be entered by the commission

in response to a petition for rehearing or other further relief. The commission may further suspend rates until it determines all those petitions.

*Id.* No one disputes in this appeal that the quoted language of subdivision 2 gives the MPUC the power to order a rehearing or provide further relief after it has reached a final determination. The heart of the parties' dispute concerns the circumstances under which it is proper for the MPUC to use its rehearing power.

The MPUC, while recognizing that the effect of the corporate reorganization had to be considered as part of any decision on the rate petition, issued a final determination in the case within the 10-month period based on a record that did not consider the issue. The commission then convened a rehearing on its own motion to receive evidence on this issue into the record and issued an adjusted final determination based on this augmented record. The court of appeals concluded this use of the MPUC's rehearing power was improper as an effort to "circumvent the 10-month statutory limitation." This effort, the court of appeals stated, "must fail as a sham." *Henry v. Public Utilities Commission,* 376 N.W.2d 226, 231 (Minn.Ct.App.1985). Further, the court of appeals reasoned, this use of the rehearing power was improper because it "ignore[d] the role of a rehearing in an administrative procedure," which is to serve the purpose of error-correction. *Id.*

■ We reject, first of all, this interpretation of the legal effect of subdivision 2's provision for a 10-month rate suspension period. The statutory time limit refers only to the period during which rates may be suspended and is not a temporal limit on the MPUC's jurisdiction, as the court of appeals seemed to conclude. The clear purpose of the provision is to protect utilities from the potentially confiscatory effect of regulatory delay. In other cases where we have interpreted similar statutory time limits, we have construed these provisions as directory and not mandatory, stating the

time limit "define[s] the time and mode in which public officers shall discharge their duties, and * * * * * * [is] obviously designed merely to secure order, uniformity, system, and dispatch in the public business." *Heller v. Wolner,* 269 N.W.2d 31, 33 (Minn.1978) (citation omitted). Consistent with these cases, we conclude subdivision 2 does not deprive the MPUC of jurisdiction to issue a decision in a rate proceeding if it fails to reach a decision within the 10-month suspension period.

We are also not persuaded that by convening the rehearing on its own motion in this case, the MPUC abused the proper purpose of a rehearing in administrative procedure. The statutes that govern the MPUC's proceedings give the commission authority "to hold hearings and make determinations upon its own motion to the same extent, and in every instance, in which it may do so upon petition." Minn. Stat. § 216A.05, subd. 5 (1984). This rate case proceeding, one of the largest and most complex in the MPUC's history, had required a great deal of time, money and effort from many parties. The commission estimated that the alternative to the rehearing procedure it adopted, dismissal of the rate case, would have resulted in costs of two to three million dollars, costs which were likely to be borne by Northwestern Bell's rate payers. The proceeding had produced a substantial record on a whole range of issues, many of which were not affected by the corporate reorganization. We therefore conclude the MPUC's decision to order a rehearing after a final determination in this case was lawful, practical, and served the public interest.

We hold the MPUC acted in this case within its statutory authority under Minn. Stat. § 237.075, subd. 2 (1984) in ordering a rehearing after reaching a final determination. The decision of the court of appeals to the contrary is reversed.

## II.

The court of appeals also based its decision on the ground that the MPUC was required by subdivision 2 and Minn.Rules pt. 1400.8300 (1985) to consider the issue of Northwestern Bell's corporate reorganization in a contested case proceeding rather than the summary rehearing procedure it adopted. *Henry,* 376 N.W.2d at 231–32. Henry also claims the rehearing was improper because its summary nature deprived him of constitutional due process.

An agency must initiate a contested case hearing when one is required by law. Minn.Stat. § 14.57 (1984). Subdivision 2 requires a contested case hearing when the MPUC determines that a "significant issue" of the reasonableness of the rates requested by a utility cannot be resolved to the satisfaction of the commission. Minn. Stat. § 237.075, subd. 2 (1984).

The MPUC convened a rehearing in this case for the purpose of receiving into evidence the DPS report on the financial effect of Northwestern Bell's corporate reorganization on the ordered rate increase and for determining whether there was cause to hold further evidentiary hearings in the form of a contested case proceeding on the matter. Before the hearing, a copy of the DPS report was served on all parties, including Henry, and comments were invited. At the hearing, which Henry attended, the MPUC again solicited testimony or comment on either the report or the restructuring issue. Henry did not object to the report either before or at the hearing, nor did he request a contested case hearing at either of these times. In his brief to this court, Henry claims he approached an MPUC commissioner immediately after the rehearing was adjourned and asked for an opportunity to question the DPS on its report. He renewed this request in a letter four days later. By order dated September 26, 1984, the MPUC adjusted the rate increase downward and ruled that further hearings were not required on the issue of reorganization.

We infer from its action that the MPUC concluded the issue of reorganization was not an unresolved issue and we find this a reasonable conclusion. The DPS had reported that the financial effect of the

reorganization could be accounted for by a minor downward adjustment in the rate increase ordered, an adjustment to which Northwestern Bell had previously stipulated. All parties to the rate proceeding were given ample notice and opportunity to challenge this proposed resolution of the issue and none did, including Henry. Given this apparent consensus, the MPUC could conclude there was no dispute over the matter. Thus, under the standards of subdivision 2, there was no "unresolved" issue requiring a contested case hearing.

Nor does Minn.Rule pt. 1400.8300 (1985) require a contested case procedure in this case. The rule provides that a rehearing shall be conducted "in the same manner prescribed for a hearing." *Id.* This means that the standards contained in subdivision 2 for ordering a contested case proceeding should be applied whether the proceeding at issue is an original proceeding or a rehearing. We have already concluded the statute did not require this rehearing to be convened as a contested case proceeding.

■ Finally, we do not agree that the summary procedure the MPUC adopted for the rehearing deprived Henry of due process as guaranteed by our state and federal constitutions. He, like all other parties, received fair notice and opportunity to make his views known. He was given notice and several opportunities to question the DPS report or to request further evidentiary hearings on the matter and he did not avail himself of these chances. Inexplicably, he attempted to participate in any hearings on the matter and to question the DPS only *after* the hearing had been adjourned. This request was not a timely or reasonable effort to participate and the MPUC's failure to respond to the request did not violate fundamental fairness or due process. We hold the MPUC was not required by Minn.Stat. § 237.075, subd. 2 (1984) or Minn.Rules pt. 1400.8300 (1985) to consider the issue of Northwestern Bell's corporate reorganization in a contested case proceeding. We further hold the summary procedure adopted for the rehearing

in this case did not deprive Henry of constitutional due process.

### III.

■ Henry claimed before the court of appeals that the MPUC members who decided this case lacked the qualifications required by Minn.Stat. § 216A.03 (1984). This challenge was rejected on the ground that a court is not the appropriate forum in which to consider the qualifications of commissioners under the statute. We agree. Section 216A.03 directs that members of the MPUC shall be appointed by the governor with the advice and consent of the senate. In selecting members, the governor is directed to give consideration to "persons learned in the law or persons who have engaged in the profession of engineering, public accounting or property and utility valuation as well as being representative of the general public." *Id.* In enacting this statute, the legislature has suggested that the governor "consider" persons with certain professional expertise when appointing members, but the governor's authority is not constrained by the law and no legal duty regarding the qualifications of those appointed is thereby created that we can enforce. We affirm the decision of the court of appeals on this issue and we hold this court is not an appropriate forum in which to challenge the qualifications under Minn.Stat. § 216A.03 (1984) of the MPUC commissioners who heard this case.

### IV.

■ Henry's final claim is that Northwestern Bell did not meet its statutory burden of proof as to the rate increase ordered. Telephone service rates are to be fair and reasonable. Minn.Stat. § 237.06 (1984). A telephone company petitioning for a rate change bears the burden of proving the rate change it proposes is "just and reasonable." Minn.Stat. § 237.075, subd. 4 (1984). If, after hearings, the MPUC finds the proposed rates are unjust, unreasonable or discriminatory, the commission shall determine the rates to be

charged. Minn.Stat. § 237.075, subd. 5 (1984).

We will review the MPUC's determination of a just and reasonable rate in this case according to the substantial evidence standard for rate of return determinations and the arbitrary and capricious standard for rate design determinations. *Hibbing Taconite Co. v. Public Service Commission,* 302 N.W.2d 5, 9 (Minn.1980). Based on our careful review of the evidence in the record of this case and the 100–page order of the MPUC, we conclude the decision of the MPUC was supported by evidence in the record and was not arbitrary and capricious. We therefore hold Northwestern Bell met its statutory burden of proof under Minn.Stat. § 237.075, subd. 4 (1984) as to the rate increase ordered.

Reversed in part; affirmed in part. The July 27, 1984 and September 26, 1984 orders of the MPUC are reinstated.